| | | |
|---|---|---|
| **LOUIS V. HOSE AND JULIE H. HOSE** | * | **NO. 2024-CA-0493** |
| | * | |
| **VERSUS** | | **COURT OF APPEAL** |
| | * | |
| **JAMES SCOTT O'CONNELL AND WHITNEY ELIZABETH O'CONNELL** | * | **FOURTH CIRCUIT** |
| | | **STATE OF LOUISIANA** |

**\* \* \* \* \* \* \***

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-02408, DIVISION "M"
Honorable Paulette R. Irons, Judge
\* \* \* \* \* \*
**Judge Dale N. Atkins**
\* \* \* \* \* \*

(Court composed of Judge Paula A. Brown, Judge Tiffany Gautier Chase, Judge Dale N. Atkins)

Katy K. Sinor
501 Jewel Street
New Orleans, LA 70124

Howard E. Sinor, Jr.
GORDON, ARATA, MONTGOMERY, BARNETT, MCCOLLAM, DUPLANTIS & EAGAN, LLC
201 St. Charles Avenue, 40th Floor
New Orleans, LA 70170-4000

  COUNSEL FOR PLAINTIFFS/APPELLANTS, Louis V. Hose and Julie H. Hose

David M. Fink
ONEBANE LAW FIRM, APC
400 East Kaliste Saloom Road, Suite 300
Lafayette, LA 70502-3507

  COUNSEL FOR DEFENDANT/APPELLEE, James Scott O'Connell and Whitney Elizabeth O'Connell

**AFFIRMED IN PART; REVERSED IN PART; AMENDED IN PART AND**
             **AFFIRMED AS AMENDED**
                  **MAY 8, 2025**

This civil appeal involves a dispute between neighbors regarding a common driveway established by a "Dedication of Community Driveway" ("Dedication"). Appellants, Louis Hose ("Mr. Hose") and Julie Hose ("Mrs. Hose") (collectively the "Hoses"), are the current owners of 6331 Annunciation Street in New Orleans, Louisiana ("6331 Annunciation"). Appellees are James O'Connell ("Mr. O'Connell") and Whitney O'Connell ("Mrs. O'Connell") (collectively the "O'Connells"), and they are the current owners of 6333 Annunciation Street in New Orleans, Louisiana ("6333 Annunciation"). The Hoses filed a "Petition for Declaratory Judgment and Injunctive Relief" ("Petition"), wherein they requested that the trial court (1) recognize them as owners via acquisitive prescription of a certain part of the Driveway (the "Parking Space"); (2) issue an injunction to prevent the O'Connells from interfering with their use of the Parking Space and the Driveway; (3) issue an order directing the O'Connells to remove any and all obstructions in the Driveway, namely certain trees and a fence located in the Driveway; (4) award damages to them; and (5) declare the common driveway servitude in favor of the O'Connells' property (6333 Annunciation) and burdening

the Hoses' property (6331 Annunciation) was extinguished by prescription of non-use.

The Hoses now seek review of the trial court's April 26, 2024 "Amended and Restated Judgment" ("Amended Judgment"), wherein the trial court (1) denied the Hoses' request for a declaratory judgment recognizing them as owners via acquisitive prescription of the Parking Space and a corresponding servitude of passage for access to any vehicle located in the Parking Space; (2) denied the Hoses' request to issue an injunction to prevent the O'Connells from interfering with their use of the Parking Space and a servitude of passage to access the Parking Space; (3) granted the Hoses' request for an injunction ordering the O'Connells not to interfere with their use and enjoyment of the Driveway, noting that "[s]aid injunction includes interfering with or obstructing access to a vehicle temporarily stopped in the . . . [D]riveway"; (4) granted the Hoses' claim for prescription of nonuse, thereby extinguishing the servitude as a burden on 6331 Annunciation but retaining it in favor of 6331 Annunciation; (5) denied the Hoses' and the O'Connells' respective claims for removal of certain obstructions in the Driveway; and (6) denied the Hoses' claim for monetary compensation. The O'Connells filed an Answer to the Hoses' appeal, wherein they seek to modify the April 26, 2024 Amended Judgment in certain respects and request reasonable attorney's fees and costs associated with the appeal in accordance with La. C.C.P. art. 2164, i.e., frivolous appeal damages.[1]

_____

[1] As discussed more fully later in this Opinion, La. C.C.P. art. 2164 states:

> The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.

For the following reasons, we affirm the April 26, 2024 Amended Judgment in part; we reverse the judgment in part; and we amend the judgment in part and affirm it as amended. We grant the O'Connells' Answer in part and deny it in part. We also deny their request for frivolous appeal damages.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### Dedication of Community Driveway Servitude

Decades before the current litigation, on February 23, 1939, the then-owner of the subject properties—which now have the municipal addresses 6331 Annunciation and 6333 Annunciation—was the Sixth District Building and Loan Association. On that date, Edward F. Scanlan, President of the Sixth District Building and Loan Association, executed the Dedication "with the view of creating a community or common driveway in favor of" the two properties ("Driveway"). After describing the lots, the Dedication stated, in pertinent part:

> [T]he Sixth District Building and Loan Association does hereby dedicate, for the purpose of creating said driveway in favor of said . . . described lots of ground, the same to form part of the respective titles to said lots of ground and to be binding on all future owners, possessors and purchasers forever, the following community or common driveway to-wit:
>
>> The right of a community passage and driveway for the use of automobiles and vehicles of every nature and character whatsoever between the . . . lots described hereinabove, owned by the said appearer, which community passage and driveway herein established and dedicated measures seven feet, two inches front on Annunciation Street, by a depth between equal and parallel lines of One hundred and thirty feet, and is composed of three feet, seven inches taken from lot No. 13 [what ultimately became 6331 Annunciation] and three feet, seven inches taken from the adjoining side of lot No. 14 [6333 Annunciation] . . . .
>>
>> The right of the aforesaid community passage and driveway created and dedicated herewith, includes the right of egress and ingress to all persons owning or inhabiting the aforesaid property and

3

to all persons having any business or social relations with the owners, present or future, and inhabitants.

The said passageway or common driveway is to remain unobstructed at all times; that no automobiles or other vehicles are to remain parked in said driveway, nor any garbage cans or other obstructions to be placed in the Street or sidewalk in front of said driveway, and the Sixth District Building and Loan Association does by these presents dedicate and create in favor of said two lots said community or common driveway for the purpose as hereinabove set forth.

Ultimately, in 1947 Eugene and Audrey Fischer ("Mrs. Fischer") (collectively the "Fischers") purchased 6331 Annunciation. Their daughter, Sue Pagett ("Mrs. Pagett"), was born in 1959, and she lived at 6331 Annunciation from the year of her birth until August 2018 when she sold the property to the Hoses. The O'Connells purchased the neighboring property, 6333 Annunciation, from Megan Ciota in December 2021.

## The Hoses' March 21, 2022 Petition for Declaratory Judgment and Injunctive Relief

On March 21, 2022, the Hoses filed their Petition, therein contending that they and their predecessors in title had used the Parking Space "for no less than thirty years," specifically an area "measuring in width seven feet, two inches front on Annunciation Street, by a depth of nineteen feet between equal and parallel lines, commencing ten feet from Annunciation Street." To this end, the Hoses asserted that because they and their predecessors in title had "exercised as owner physical acts of use, detention or enjoyment of the Parking Space continuously, uninterrupted, peaceably, publicly and unequivocally for thirty years or more," they had "acquired ownership of the Parking Space" via thirty-year acquisitive prescription.

4

The Hoses further contended that "[n]either the owners of 6333 Annunciation nor anyone on their behalf ha[d] used the Driveway for passage or . . . with automobiles and other vehicles for over ten years." The Hoses asserted "[t]he passage and driveway rights contained in the Dedication . . . in favor of 6333 Annunciation ha[d] been extinguished by the prescription of nonuse." Accordingly, the Hoses requested a declaration that the common driveway servitude in favor of 6333 Annunciation had been extinguished, such that 6333 Annunciation no longer enjoyed any benefits outlined in the Dedication.

Additionally, the Hoses explained that after the O'Connells purchased 6333 Annunciation in December 2021, the O'Connells instructed the Hoses to cease parking in the Parking Space. According to the Hoses, they responded with a letter, which detailed their alleged "history of use of the Driveway and Parking Space" so as to explain their rights to same. The Hoses alleged that after the O'Connells received that letter, in late February 2022, the O'Connells began to park a truck at the edge of the Driveway, thereby rendering the Hoses' use of the Driveway "inconvenient." The Hoses further alleged in early March 2022 the O'Connells moved the truck such that it was parked approximately two feet inside the Driveway and Parking Space, thereby rendering the Hoses unable to use the Driveway and Parking Space. Considering these allegations, the Hoses requested an order directing the O'Connells to move the truck, as well as an injunction ordering the O'Connells not to interfere with, disturb, or make more inconvenient the Hoses' possession and enjoyment of the Driveway and Parking Space by encroaching on same. The Hoses also requested "damages for the disturbance and inconvenience experienced as a result of [the O'Connells'] actions."

Further, the Hoses alleged that prior owners of 6333 Annunciation had erected a fence across part of the Driveway and planted two trees within the Driveway. Per the Hoses' Petition, these items prevented the Hoses from being able to use that part of the Driveway for passage. Accordingly, the Hoses also sought an injunction ordering the O'Connells to remove the fence and the trees.

### The O'Connells' May 17, 2022 Answer, Affirmative Defenses, and Reconventional Demand

On May 17, 2022, in response to the Hoses' Petition, the O'Connells filed an "Answer, Affirmative Defenses, and Reconventional Demand." In pertinent part, as an affirmative defense, the O'Connells countered that the Hoses (and/or their ancestors in title) did not have unequivocal, continuous, uninterrupted, public, and adverse possession of the Parking Space for a period of thirty years, such that they failed to satisfy the requirements of thirty-year acquisitive prescription. Additionally, the O'Connells argued the Hoses failed to satisfy the requirements to plead ten-year prescription of non-use.

In their reconventional demand, the O'Connells explained that in January 2020 the Hoses installed a chimney located on the immovable property governed by the Dedication and in April 2020 subsequently installed an air conditioner compressor on the immovable property governed by the Dedication. The O'Connells asserted these installations constituted violations of the Dedication, "which . . . inhibited and prevented" their rights to possess, use, and enjoy the driveway. Thereafter, the O'Connells "request[ed] injunctive relief to protect and restore their rights to the possession, use, and enjoyment of the" Driveway; an order directing the Hoses to remove the air conditioner compressor and chimney;

6

damages for their loss of use and the inconvenience caused by the Hoses' obstructions in the Driveway; and attorney's fees, and costs.

## Trial

The trial in this matter occurred on November 14 and 15, 2023. In relevant part, the trial court heard the testimony of Mrs. Pagett, Mr. Hose, Mrs. Hose, Mrs. O'Connell, and Clint Simoneaux ("Mr. Simoneaux").

### *Sue Pagett's Testimony*

Mrs. Pagett testified that she was born in June 1959 and her parents lived at 6331 Annunciation at that time. Mrs. Pagett explained she lived at 6331 Annunciation from the time of her birth until the time she sold the house in 2018 to the Hoses. During Mrs. Pagett's testimony, counsel for the Hoses showed Mrs. Pagett various photographs of cars parked in the Parking Space, and she testified that she and her family members parked in the Parking Space during the entire time she lived at 6331 Annunciation. When asked whether anyone living at 6333 Annunciation ever objected to her or her family parking in the Parking Space or if she ever overheard anything to that effect, Mrs. Pagett replied, "No." Mrs. Pagett further explained that if she parked in the Parking Space, when she opened her car door, it would swing "[a] little bit" beyond the Parking Space and that she would thereafter briefly walk on the 6333 Annunciation lot; but Mrs. Pagett testified that no one from 6333 Annunciation complained about or objected to this. She stated this occurred the entire time that she lived at 6331 Annunciation. Additionally, Mrs. Pagett testified her family used the Parking Space for "[w]ashing cars, the kids playing, [and] parties." Mrs. Pagett also explained that some time prior to the spring of 1988, her mother paved the Parking Space with aggregate concrete as she "wanted it to be all one level because the grass area would get ruts in it and be

7

muddy." When asked whether her family used the Parking Space as their own space, Mrs. Pagett answered affirmatively.

When asked about the use of the Driveway and Parking Space by the owners of 6333 Annunciation, Mrs. Pagett explained the owners of 6333 Annunciation parked their car in a space in front of their house instead of parking in the Parking Space. However, the following colloquy occurred when counsel for the Hoses asked about whether anyone other than the Fischers or Mrs. Pagett ever parked in the Parking Space:

> Q.     Were there times when someone other than family members would park in the parking space?
>
> A.     Yes.
>
> Q.     When that happened who were the folks who would do that?
>
> A.     Guest[s] of . . . ours or somebody asking if they could park. It was always with permission.
>
> Q.     Did the folks at 6333 ever ask your permission to park in the parking space?
>
> A.     Occasionally.
>
> Q.     Can you tell the Court about when that would be?
>
> A.     Usually the few times it happened around Mardi Gras. We had parades around the house. I [was not] having guests. They were. They asked if somebody could park there that was visiting.
>
> Q.     Did you say yes?
>
> A.     Yes.

When counsel for the Hoses asked Mrs. Pagett about renovations undertaken by one of the prior owners of 6333 Annunciation, Mrs. Pagett explained that in approximately 1999 a couple named the Hainkels lived at 6333 Annunciation and added a pool in their backyard, whereupon they also extended their fence and

8

added a gate. According to Mrs. Pagett, one "could no longer drive all the way to the back" of the Driveway to reach the garage at 6331 Annunciation after the Hainkels modified the fence. Counsel for the Hoses continued to ask Mrs. Pagett about the use of the driveway by residents of 6333 Annunciation, whereupon the following colloquy occurred:

> Q. From the time of those renovations in 1999 until you sold [6331 Annunciation] to the Hoses, did the residents of 6333 ever drive a vehicle down the driveway?
>
> A. No.
>
> . . . .
>
> Q. What if anything did the owners of 6333 do in that common driveway to your observation?
>
> A. To my observation people walked back to go through their gate. We walked back to go through our gate; b[r]ought stuff back up. It was a common area. We used it. They used it; the owners of 6333 used it; the owners of 6331 used it.
>
> . . . .
>
> Q. Other than the walking that you described, was there any other use that you can recall today?
>
> A. No.

During her testimony, Mrs. Pagett did not specify a time period during which she witnessed the owners of 6333 Annunciation using the driveway and walking on it other than explaining that this occurred at some point in time after the Hainkels' renovations in 1999.

**_Louis Hose's Testimony_**

Mr. Hose testified that he and Mrs. Hose purchased 6331 Annunciation in August 2018. He described the Parking Space as being "covered with raised aggregate[] concrete" and distinguishable from a parking spot in front of 6333

9

Annunciation because that "paving is kind of scored concrete. It is significantly different than the aggregate concrete." Mr. Hose explained the boundary he and Mrs. Hose were claiming in terms of the Parking Space was "the raised aggregate . . . reflected in [a] surveyor's report that [they] obtained." Mr. Hose stated he believed possession began for acquisitive prescription purposes in 1988 after Mrs. Fischer poured the aggregate concrete.

Regarding the beginning of the dispute with the O'Connells, Mr. Hose testified that in January 2022 he received a text message from Mr. O'Connell to the effect Mr. O'Connell "wanted to open a discussion" about the Driveway, whereupon Mr. Hose first learned about the Dedication from Mr. O'Connell's message. Mr. Hose explained that, prior to that time, he "was aware it was a common driveway" but "was unaware there were restrictions." Thereafter, according to Mr. Hose, he did his own research about the situation and, regarding the Parking Space, arrived at the belief "that there was a strong potential that a person who possesses a piece of property for well over 30 years can acquire ownership of the piece of property." Mr. Hose testified that he subsequently conveyed his research to Mr. O'Connell in a February 23, 2022 letter.

When asked how the O'Connells responded to his letter, Mr. Hose stated, "We did not receive any formal response. However, the next day [Mrs.] O'Connell's dad moved [a] pickup truck . . . right next to the community driveway which made it impossible for us to open the doors on our vehicles when we parked in the [P]arking [S]pace." When asked whether Mrs. O'Connell's father's truck "was placed in the servitude two days after [he] sent the letter," Mr. Hose responded, "That is correct. It is my understanding it was [Mrs. O'Connell's]

father's truck." Subsequently, the following colloquy occurred regarding the truck and its impact as alleged by Mr. Hose:

> Q.     How long did the O'Connells leave the truck parked in such a way to prevent you and your wife from parking in the parking space?
>
> A.     It was approximately 12 weeks. It started here 2/26/22. They finally moved it. It was the middle of May right before we had a court hearing on the matter.
>
> . . . .
>
> Q.     Where did you park when the truck was put in the location shown in Plaintiff[s'] Exhibit 34?[2]
>
> A.     We [could not] get a car in there because the truck was actually in the parking space. So we could not park there at all. We had to park out on the street; wherever was available on the street is where you ended up parking. It could be close or fairly far away.

When counsel for the O'Connells asked Mr. Hose if any actions by the O'Connells caused him to experience mental anguish or if "just the involvement in the lawsuit [was] the source of" his alleged mental anguish, the following colloquy occurred:

> A.     Just the whole situation of not getting along with the neighbors; not having access to my property without having to move my vehicle. All of these things caused anxiety and concern.
>
> Q.     Not having access to your property without moving your vehicle, what do you mean by that?
>
> A.     So the consent agreement that was agreed to basically seven feet two inches where I could park my car.[3] We then agreed to 20

---

[2] Throughout the Opinion, the phrasing "Plaintiffs' Exhibit #" will refer to exhibits introduced into evidence by the Hoses.

[3] After conducting a hearing on a Motion for Preliminary Injunction filed by the Hoses, on June 15, 2022, the trial court signed a Consent Judgment. As stated therein, the Hoses and the O'Connells agreed that from May 31, 2022, to July 11, 2022, the Hoses were:

> permitted to continue to park their vehicle on the tract of land defined as: an area measuring in width seven feet, two inches front on Annunciation Street, by a depth of nineteen feet between equal and parallel lines, commencing ten feet from Annunciation Street. Said nineteen foot long space from front to rear is composed

inches where I could open my door and I could go in and go out of my door.[4] That I could have use that for no other point in time to cross on to the O'Connell's property.

If I wanted to go into the backyard I would have to either move my car that was parked in the parking space or I would have to go through my home and going through my home makes it problematic when I am trying [to] bring a bike to the front of the house; trying to do work; mov[ing] my grandson in his wagon.

It is not a normal situation that we had experienced where every time we want to go from the front to the back, we have to move a vehicle or go through the house.

Mr. Hose also testified about the 6333 Annunciation fence, stating: "The fence . . . does prevent us [from reaching the 6331 Annunciation backyard with a vehicle]. This is part of our claim against the O'Connells that says this fence is in the common driveway, and the palm trees we need to have them removed so we can access our backyard. It goes all the way back to the property line approximately another 40 feet beyond this access fence." However, Mr. Hose further testified that he also cannot reach his backyard due to obstructions associated with his own property, 6331 Annunciation, including the fence, a chimney, and part of the air conditioning system:

Q.  Can you get into your backyard with your fence as you sit here today?

A.  With my vehicles I cannot. With a small vehicle I can. Meaning like a golf cart or something like that today, I can drive it back there.

. . . .

---

of three feet, seven inches of lot No. 13 and of three feet, seven inches from the adjoining side of lot No. 14.

[4] Then, on August 18, 2022, the trial court signed another Consent Judgment, whereby the Hoses and the O'Connells agreed that from July 11, 2022, until the trial court ruled on the merits of their case, the Hoses were permitted "twenty-two (22) inches of open space on the side of [the O'Connells' property]" to use "solely for egress and ingress, into their vehicle."

12

Q.      Turn to document 0025. On the left side, the very left side you see some bricks?

A.      Yes.

Q.      Is that part of your chimney?

A.      Yes.

Q.      What was that -- do you know when that was put in that location?

A.      It was put in during the 2019/2020 renovation of the house.

Q.      And the drainage and electrical box would that also be the same timeline?

A.      The drainage definitely. It [was not] an electrical box there. There was an electrical service breaker.

        . . . .

Q.      Please turn to 0062 which I believe we discussed earlier. Do you see a black platform with some type of equipment that is on top of it?

A.      Yes.

Q.      What is that?

A.      Part of the air-conditioning system.

        . . . .

Q.      With a Ford F-150 or a Lexus [the vehicles Mr. Hose said that he and Mrs. Hose own] can you fit either one of those vehicles through the common driveway with the chimney . . . and your AC equipment in that location?

A.      I have never done it. I [do not] know, but I believe I cannot with the AC unit where it is.

Thus, Mr. Hose testified that these obstructions associated with his own house—

6331 Annunciation—also prevent vehicular use of the driveway.

### Julie Hose's Testimony

Mrs. Hose testified and explained that after Mr. O'Connell told the Hoses not to park in the Parking Space in January 2022, she spoke with Mrs. O'Connell. As Mrs. Hose explained, "[Mrs. O'Connell] told me something about her uncle at the closing who was their closing attorney told her if they did not disapprove of us parking there, then they were kind of agreeing to something about -- something legal. He[r uncle] told them they needed to object to us parking there." Mrs. Hose explained she subsequently talked to Mr. O'Connell too, who said "he wanted to adamantly stick to this Dedication of Community Driveway which claims that there is not supposed to be anything blocking this . . . [D]riveway." According to Mrs. Hose, she "told him" in response "how hard it was to . . . park on the street." Mrs. Hose testified, "I continued to park there [in the Parking Space] . . . because I thought it was unnecessary -- it was our property."

Mrs. Hose testified that after the O'Connells received Mr. Hose's letter about the Driveway in late February 2022, "the next day [was] when the [O'Connell] truck showed up." Counsel for the Hoses showed Mrs. Hose pictures the Hoses entered into evidence, which show the location of the truck on various dates beginning on February 26, 2022. Some of the pictures show the truck parked at the edge of the Parking Space, while others show the truck partially parked inside the Parking Space on March 2, 2022 (Plaintiffs' Exhibit 32); March 3, 2022 (Plaintiffs' Exhibits 33 and 34); and March 5, 2022 (Plaintiffs' Exhibit 36).

When asked how the truck's location next to the Parking Space affected their ability to park in the Parking Space, Mrs. Hose responded, "[Mr. Hose] was able to back in the car. Obviously I would have to get out prior to him backing in. It made it very difficult. He was able to do it with a lot of caution." When asked

how the truck's location parked partially inside the Parking Space affected their ability to park in the Parking Space, Mrs. Hose responded, "It totally prevent[ed] us from parking in what we consider our parking spot." Mrs. Hose testified that the O'Connells were not living at 6333 Annunciation during the time period the truck was parked at the edge of or inside the Parking Space. Counsel for the Hoses asked Mrs. Hose whether the O'Connells ever moved the truck during the approximately twelve-week long period that the truck was parked at the edge of or inside the Parking Space, and she explained:

> The dad, [Mrs. O'Connell's] father, came like maybe throughout the whole 12 weeks like three times maybe moved it for a couple hours; possibly overnight and moved it back. One time when he moved it overnight, we pulled our car in and left it there overnight. The next day he had someone who was watching our house waiting for me leave for errands. As soon as I left for an errand he came back with the truck and parked it again.

Mrs. Hose further explained that while this was occurring she underwent surgery on her ankle, during which time she had to use a wheelchair or crutches. Mrs. Hose testified she and Mr. Hose had to "park on the street wherever [they] could." Thereafter, she testified:

> It was a very terrible time. It did not make any sense that they parked the truck here when they were not living in the house. Yes. I definitely suffered from it; not physically; mentally. We have a very, very peaceful street. All the neighbors we care for each other. We take care of each other; support each other. This was just so outwardly wrong.

> It upset the whole neighborhood. It [was not] just us. It was very obvious that all of a sudden we are not parking in our parking spot. There is a truck there and the house is vacant next door. It was a very difficult time. I do not wish this on anyone.

### Whitney O'Connell's Testimony

Mrs. O'Connell also testified at trial. In pertinent part, Mrs. O'Connell testified that her house—6333 Annunciation—had a fence and palm trees located

in the Driveway, which were installed by a previous owner. In relevant part, Mrs. O'Connell also testified that the only way to reach her backyard was via the Driveway.

Additionally, counsel asked Mrs. O'Connell about Plaintiffs' Exhibit 33 and Plaintiffs' Exhibit 34, the photographs dated March 3, 2022. Mrs. O'Connell described these photos as depicting "a work truck for my dad in front of our house." Mrs. O'Connell explained she "had [her] father park the vehicle [there] to uphold the integrity of [their] property boundary." Counsel then asked Mrs. O'Connell if the pictures depictured the truck partially parked in the parking spot in front of 6333 Annunciation and partially parked in the Driveway, to which she answered affirmatively. Another photograph—Plaintiffs' Exhibit 36—was dated March 5, 2022, and it shows the truck parked partially in the Parking Space. Though Mrs. O'Connell did not discuss this piece of evidence during her testimony, we note Plaintiffs' Exhibit 32 shows a gentleman—Mrs. O'Connell's father based on her testimony and the record—preparing to open the front driver side door of the truck shown in Plaintiffs' Exhibits 33, 34, and 36.

### Clint Simoneaux's Testimony

Finally, in pertinent part, Mr. Simoneaux, a surveyor with Gilbert, Kelly & Couturie, testified about an April 14, 2022 survey he prepared of 6331 Annunciation. When asked whether the 6333 Annunciation fence as depicted on his survey would block one-half of the Driveway, Mr. Simoneaux answered affirmatively. At the close of trial, the trial court took the matter under advisement.

16

## April 26, 2024 Judgment on the Motion to Amend Judgment and for New Trial; the Amended and Restated Judgment

On February 2, 2024, the trial court issued its judgment and written reasons for the judgment. Then, on February 9, 2024, the Hoses filed a "Motion to Amend Judgment and for New Trial." On April 26, 2024, the trial court issued a judgment, which denied the Hoses' Motion for New Trial but granted their Motion to Amend Judgment. In this latter regard, the trial court amended the judgment so as to grant the Hoses' claim for a permanent injunction enjoining the O'Connells from interfering with or disturbing the use and enjoyment of the Driveway. The Amended Judgment stated:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiffs', Louis V. Hose and Julie Hose, Petition for Declaratory Judgment declaring their ownership of the parking space and servitude of passage to access vehicles in the parking space is DENIED.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Plaintiffs' Louis V. Hose and Julie Hose, Petition to Enjoin the Defendants', James Scott O'Connell and Whitney Elizabeth O'Connell, from interfering with or disturbing the use and enjoyment of the parking space and servitude of passage to access the parking space is DENIED.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Plaintiffs' Louis V. Hose and Julie Hose, Petition to Enjoin the Defendants, James Scott O'Connell and Whitney Elizabeth O'Connell, from inferring with or disturbing the use and enjoyment of the Dedication of Community Driveway servitude is GRANTED. Said injunction includes interfering with or obstructing access to a vehicle temporarily stopped in the community driveway.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Plaintiffs', Louis V. Hose and Julie H. Hose, claim for Prescription of Nonuse of the Dedication of Community Driveway, registered in COB 500, folio 529, in favor of 6333 Annunciation Street, New Orleans, Louisiana, is GRANTED. This Judgment therefore extinguishes this Dedication of Community Driveway servitude as a burden on 6331 Annunciation Street, New Orleans, Louisiana. The Dedication of Community Driveway remains in favor

of 6331 Annunciation Street, New Orleans, Louisiana, and continues to burden 6333 Annunciation Street, New Orleans, Louisiana.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Plaintiffs' and Defendants' respective Claims for Removal of Certain Obstructions and Objects from the Community Driveway are DENIED.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Plaintiffs', Louis V. Hose and Julie H. Hose, claim for monetary compensation arising from Defendants, James Scott O'Connell and Whitney Elizabeth O'Connell, obstruction of the parking space is DENIED.

The Hoses' timely appeal followed. Additionally, the O'Connells timely filed an "Answer to Appeal" ("Answer") with this Court (summarized below).

## ASSIGNMENTS OF ERROR

In their brief to this Court, the Hoses assert seven assignments of error. Specifically, they contend:

1.	The trial court erred in its interpretation of the legal presumption found in La. [C.C.] art. 3427.

2.	The trial court erred in finding that the Hoses failed to prove intent to possess the parking space as owner. Specifically the court erred in (a) requiring subjective, as opposed to objective, evidence of intent; (b) finding facts contradicted by the parties' stipulation[;] and (c) holding that insufficient evidence was introduced regarding intent.

3.	The trial court erred in finding facts on an issue not raised by the parties, and in finding facts unsupported by any evidence, namely, finding that the prior owners "allowed" parking pursuant to a "hypothetical agreement" (the trial court's own description). The trial court also erred in inferring facts from the absence of testimony.

4.	The trial court erred in ruling that acquisitive prescription did not commence to accrue until 1988 based upon testimony from a fact witness.

5.	The trial court erred in requiring factual evidence that the O'Connells' trees and fence actually obstruct use of the common driveway. The trial court erred in finding insufficient evidence of actual obstruction.

18

6.    The trial court erred in finding that the Hoses must own the Parking Space to assert claims for violation of the laws of vicinage and/or trespass.

7.    The trial court erred in finding that the law required the Hoses to present expert testimony in order to recover damages for mental anguish, inconvenience and loss of enjoyment of property.

## ANSWER TO APPEAL

As noted previously, the O'Connells filed an Answer to the Hoses' appeal, wherein they requested this Court reverse or modify paragraphs 3, 4, and 5 of the Amended Judgment. Below is their summary of the modification they request:

3. Defendants - Appellees respectfully request that this Honorable Court reverse or in the alternative modify the District Court's Amended and Restated Judgment which granted Plaintiffs' Louis V. Hose and Julie Hose, Petition to Enjoin the Defendants, James Scott O'Connell and Whitney Elizabeth O'Connell, from interfering with or disturbing the use and enjoyment of the Dedication of Community Driveway Servitude, which included interfering with or obstructing access to the Hoses' vehicle temporarily stopped in the community driveway, as a matter of fact and law, since the Dedication of Community Driveway did not provide the Hoses any temporary parking, and as a matter of law, as the District Court improperly enlarged the scope of the Dedication of Community Driveway, and the Amended and Restated Judgment was not in adherence to the requirements of Louisiana Code of Civil Procedure 3605.[5]

4. Defendants - Appellees respectfully request that this Honorable Court reverse or in the alternative modify the District Court's Amended and Restated Judgment which granted Plaintiffs' Louis V. Hose and Julie Hose, claim for Prescription of Nonuse of the Dedication of Community Driveway and therefore extinguished the Dedication of Community Driveway servitude as a burden on 6331 Annunciation Street, New Orlean[s], Louisiana in favor of 6333 Annunciation Street, New Orleans, Louisiana as the Hoses failed to

---

[5] Louisiana Code of Civil Procedure Article 3605 states:

An order granting either a preliminary or a final injunction or a temporary restraining order shall describe in reasonable detail, and not by mere reference to the petition or other documents, the act or acts sought to be restrained. The order shall be effective against the parties restrained, their officers, agents, employees, and counsel, and those persons in active concert or participation with them, from the time they receive actual knowledge of the order by personal service or otherwise.

satisfy their burden of proof to show that the owners of 6333 Annunciation Street failed to use the Dedication of Community Driveway, in a manner as prescribed therein, for a period of ten consecutive years. The District Court improperly interpreted the Dedication of Community Driveway and held that it only applied to automobile and vehicles instead of automobile, vehicles, and persons as clearly and unambiguously stated therein.

5. Defendants - Appellees respectfully request that this Honorable Court reverse or in the alternative modify the District Court's Amended and Restated Judgment as to Defendants - Appellees claim for the removal of certain obstructions and objects placed in the Dedication of Community Driveway by the Hoses as the Dedication of Community Driveway is a burden on both properties - in the event that this Honorable Court reverses [or] modifies Paragraph 4 of the Amended and Restated Judgment as the Dedication of Community Driveway is clear that the common driveway shall remain unobstructed in accordance with the Dedication of Community Driveway and historical use of the immovable property.

Additionally, the O'Connells requested reasonable attorney's fees and costs associated with the appeal pursuant to La. C.C.P. art. 2164.

Based on our review of the record, the parties' briefs, and the O'Connells' Answer, we will discuss and resolve the following issues in this Opinion: (1) acquisitive prescription; (2) prescription of non-use; (3) vehicles temporarily stopped in the driveway; (4) obstructions; and (5) frivolous appeal damages. Before doing so, we address a preliminary matter.

## PRELIMINARY MATTER

On December 19, 2024, the Hoses filed with this Court a document they titled "Appellants' Answer to Appeal," wherein they explained they were filing "this Answer to the Appeal filed by Defendants/Appellees," the O'Connells. That is, the Hoses filed this pleading in response to the O'Connells' Answer. The Hoses contended the O'Connells' appeal—by virtue of their Answer—was frivolous, such that the Hoses were entitled to reasonable attorney's fees and costs under La. C.C.P. art. 2164. Then, on January 3, 2025, the Hoses filed another document with

this Court, which they titled "Appellee Brief." Therein, the Hoses contended that because an answer filed by an appellee is equivalent to an appeal on his or her part per La. C.C.P. art. 2133,[6] the O'Connells' Answer constituted an appeal because they sought reversal of certain parts of the trial court's Amended Judgment. Accordingly, the Hoses asserted they were "appellees" for purposes of the O'Connells' Answer and thus entitled to file an appellee brief. Then, in response to the Hoses' aforementioned pleadings, on January 13, 2025, the O'Connells filed a document with this Court, which they titled "Appellee/Defendant Reply Brief." Although the O'Connells stated in their pleading that "[n]othing in [La. C.C.P. art. 2133] discusses alteration of the designation of the appellant and appellees due to the filing of an Answer," they nonetheless responded to the arguments asserted by the Hoses in their "Appellants' Answer to Appeal" and "Appellee Brief."

Neither the Louisiana Code of Civil Procedure, the Uniform Rules of the Courts of Appeal, nor this Court's Local Rules allow an appellant to file an "answer" and/or an "appellee brief" in response to the appellee filing an answer to appeal. There is no jurisprudential support for such pleadings either. Rather, the appellant has the opportunity to respond to the appellee's answer in their appellant reply brief. *See, e.g., Freeman v. Freeman*, 552 So.2d 636, 639 (La. App. 2d Cir. 1989) (explaining that the appellant could not advance new issues in her reply brief but could therein rebut the appellee's answer to appeal (quoting Rule 2-12.6, Uniform Rules, Courts of Appeal)). "To allow" an appellant to file an "answer" and an "appellee brief" in response to an appellee's answer "would invite an

_____

[6] Louisiana Code of Civil Procedure Article 2133(A) states, in pertinent part, that "[t]he answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer."

endless sequence of counter-appeals" contrary to judicial economy. *Id.* The above-delineated sequence of filings in the present dispute is a case in point. Moreover, considering that the appellee must file an answer within fifteen days of the return day or the notice of lodging, which fifteen-day deadline occurs before the appellant must file the appellant brief, it is therefore possible (timing-wise) for the appellant to address the appellee's answer in the appellant brief too.

Considering the foregoing, the Hoses should have addressed the O'Connells' Answer in their appellant brief and/or their appellant reply brief. Because there is no support for the Hoses' "Appellants' Answer to Appeal," the Hoses' "Appellee Brief," and the O'Connells' responsive "Appellee/Defendant Reply Brief," we have not considered these pleadings in our resolution of this matter, and we pretermit discussion of same.

## DISCUSSION

### Acquisitive Prescription

The first issue for us to resolve is whether, as the Hoses allege, they proved they acquired ownership of the Parking Space by means of thirty-year acquisitive prescription. We begin with the standard of review. Resolution of the Hoses' thirty-year acquisitive prescription claim requires consideration of the type of possession exercised by the Hoses and their ancestors in title, chiefly the possession exercised by the Fischers and Mrs. Pagett prior to the Hoses' purchase of 6331 Annunciation. The trial court should have determined whether their possession was precarious and, if so, whether it changed to adverse at some point in time. *See 1026 Conti Holding, LLC v. 1025 Bienville, LLC*, 2022-01288, p. 12 (La. 3/17/23), 359 So.3d 930, 940. *See also Boudreaux v. Cummings*, 2014-1499, p. 4 (La. 5/5/15), 167 So.3d 559, 562. Based on our review of the record, the trial

court either did not do so or, if the trial court did make such a determination, the trial court did not place its finding in the record. This was in error. *1026 Conti Holding, LLC*, 2022-01288, p. 12, 359 So.3d at 940. Typically, the trial court's determination as to "whether a party has possessed property sufficient to prove thirty-year acquisitive prescription is a factual determination, which is subject to [the] manifest error-clearly wrong standard of review." *Braud v. Bernstein*, 2023-0332, p. 3 (La. App. 4 Cir. 12/20/23), 381 So.3d 58, 61 (citing *St. John Baptist Church of Phoenix v. Thomas*, 2008-0687, p. 7 (La. App. 4 Cir. 12/3/08), 1 So.3d 618, 623). *See also Forrester v. Bruno*, 2023-0336, 0335, p. 4 (La. App. 4 Cir. 12/7/23), 380 So.3d 598, 601-602 (quoting *Grieshaber Fam. Props., LLC v. Impatiens, Inc.*, 2010-1216, p. 6 (La. App. 4 Cir. 3/23/11), 63 So.3d 189, 194). However, when, as here, the trial court failed to preliminarily determine the type of possession at issue, this failure interdicted the fact-finding process. *1026 Conti Holding, LLC*, 2022-01288, p. 12, 359 So.3d at 940. If the record is complete, the appellate court should conduct a *de novo* review. *Id.* (citing *Boudreaux*, 2014-1499, p. 3, 167 So.3d at 561). Because the trial court's failure to determine whether the Hoses and their ancestors in title were precarious possessors interdicted the fact-finding process, yet the record is complete, we review this issue *de novo*.

According to La. C.C. art. 3486, "Ownership and other real rights in immovables may be acquired by the prescription of thirty years without the need of just title or possession in good faith." The party who asserts acquisitive prescription has the burden of proving—by a preponderance of the evidence—"intent to possess as owner and that" this "possession has been continuous and uninterrupted, peaceable, public and unequivocal." *Delacroix Corp. v. Perez*, 1998-2447, p. 3 (La. App. 4 Cir. 11/8/00), 794 So.2d 862, 865 (first citing La. C.C.

23

art. 3424; then citing La. C.C. art. 3476; then citing *Rathborne v. Hale*, 1995-1225, 1226, p. 4 (La. App. 4 Cir. 1/19/96), 667 So.2d 1197, 1200; and then citing *Bradford v. Thomas*, 344 So.2d 717, 718-19 (La. App. 2d Cir. 1977)). Courts are to make "every presumption . . . in favor of the holder of the legal title." *Rathborne*, 1995-1225, 1226, p. 4, 667 So.2d at 1200 (first citing *Bradford*, 344 So.2d at 719; then citing *Babin v. Montegut Ins. Agency, Inc.*, 271 So.2d 642, 648 (La. App. 1st Cir. 1972); and then citing *Town of Broussard v. Broussard Volunteer Fire Dep't*, 357 So.2d 25, 28 (La. App. 3d Cir. 1978)).

Regarding possession, La. C.C. art. 3421 provides:

Possession is the detention or enjoyment of a corporeal thing, movable or immovable, that one holds or exercises by himself or by another who keeps or exercises it in his name.

The exercise of a real right, such as a servitude, with the intent to have it as one's own is quasi-possession. The rules governing possession apply by analogy to the quasi-possession of incorporeals.

Louisiana Civil Code Article 3427 provides, "One is presumed to intend to possess as owner unless he began to possess in the name of and for another." This presumption of intent to possess as owner does not attach in the case of a precarious possessor. *See Frost Lumber Indus. v. Harrison*, 41 So.2d 674, 675 (La. 1949). "[A] precarious possessor" is "one who possesses with leave[] or consent." *Succession of Kemp v. Robertson*, 316 So.2d 919, 923 (La. App. 1st Cir. 1975) (citations omitted). Louisiana Civil Code Article 3437 defines precarious possession as "[t]he exercise of possession over a thing with the permission of or on behalf of the owner or possessor." One who enjoys the use of a servitude is a precarious possessor. *1026 Conti Holding, LLC*, 2022-01288, p. 15, 359 So.3d at 942 (first citing La. C.C. art. 3437; and then citing *John T. Moore Planting Co. v. Morgan's La. & T.R. & S.S. Co.*, 126 La. 840, 870, 53 So. 22, 32 (La. 1908)). The

24

presumption of intent to possess as owner does not apply to a precarious possessor because the precarious possessors' possession is, instead, presumed to be the precarious possessor "merely exercis[ing] a right" or prerogative. *Boudreaux*, 2014-1499, p. 7, 167 So.3d at 564 (citation omitted). According to La. C.C. art. 3477, "Acquisitive prescription does not run in favor of a precarious possessor or his universal successor."

As the Louisiana Supreme Court has explained in discussing precarious possession, "the concept of implied permission as it relates to precarious possession is . . . a viable theory of our civilian law." *Boudreaux*, 2014-1499, p. 7, 167 So.3d at 563. That is, "even in the absence of express permission, tacit permission can be presumed under the limited circumstances where 'indulgence' and acts of 'good neighborhood' are present." *Id.* In such instances, a "neighborly act of tolerance . . . cannot be, and is not, the foundation of adverse possession needed for the purposes of acquisitive prescription." *Id.* A landowner's awareness of a precarious possessor's use and the landowner's allowance thereof marks the precarious possessor's use as an authorized use that cannot be characterized as adverse under the circumstances. *Id.* at p. 7, 167 So.3d at 564. It is only an unauthorized use that would be characterized as adverse for acquisitive prescription purposes. *Id.* at p. 7, 167 So.3d at 563-64.

The Louisiana Supreme Court has further explained that "by undertaking certain actions, a precarious possessor can change his [or her] type of possession and begin to prescribe." *1026 Conti Holding, LLC*, 2022-01288, pp. 15-16, 359 So.3d at 942. The precarious possessor must give actual notice of his or her intent to possess as owner "sufficient to alert the landowner that [the] property [is] in jeopardy" to thereby "commence[] . . . the prescriptive period." *Boudreaux*, 2014-

25

1499, p. 8, 167 So.3d at 564 (first citing *Delacroix Corp.*, 1998-2447, p. 10, 794 So.2d at 869; and then citing La. C.C. art. 3478). Continued use of the property in the same manner does not constitute actual notice of a change of intent. *See id.* at pp. 8-9, 167 So.3d at 564 (noting the precarious possessor, Mr. Boudreaux, merely continued to use the subject right of way and that, with nothing more, the record did not establish "actual notice was given to the landowner that [Mr.] Boudreaux intended to change the nature of his possession"). *See also Garner v. Holley*, 42,477, p. 6 (La. App. 2 Cir. 10/3/07), 968 So.2d 234, 238 (noting that one family's continued use of "the shared driveway in almost the same manner" did not establish an "alter[ation] [to] the parties' initial intent" sufficient to commence prescription). Additionally, the Louisiana Supreme Court has held if a precarious possessor excludes third parties from using the property but does not exclude the owner of the property, this action can "reasonably be construed as an exercise of . . . the right to use the property, which is not sufficient to 'give the owner some notice that [the] property is in jeopardy.'" *1026 Conti Holding, LLC*, 2022-01288, p. 18, 359 So.3d at 943-44 (quoting *St. John Baptist Church of Phoenix*, 2008-0687, p. 4, 1 So.3d at 621).

The owners of 6331 Annunciation had the right to use the Driveway pursuant to the Dedication, i.e., a servitude. Thus, they were precarious possessors. *Id.* at p. 15, 359 So.3d at 942. Because this is a matter of precarious possession, we must consider the concept of tacit or implied permission. Mrs. Pagett's testimony, as well as the photographs entered into evidence, established the Fischers and the Pagetts used the Parking Space for activities not permitted in the Dedication for decades (chiefly to park vehicles for an extended period of time); and Mrs. Fischer paved the Parking Space some time prior to the spring of 1988. However, the

owners of 6333 Annunciation may have allowed these activities as acts of indulgence, good neighborhood, and neighborly tolerance. If the owners of 6333 Annunciation were aware of these activities and authorized same, then these actions cannot be characterized as adverse so as to have commenced the prescriptive period. The record does not establish whether that was or was not the case, i.e., whether the owners of 6333 Annunciation permitted the owners of 6331 Annunciation to use the Driveway and Parking Space in these ways for the thirty years necessary for acquisitive prescription. *Cf. Boudreaux*, 2014-1499, p. 5, 167 So.3d at 562 (the landowner, Mr. Cummings, explained the precarious possessor, Mr. Boudreaux, merely used the right of way with his or his ancestor in title's "permission in a gesture of neighborly accommodation"); *Delacroix*, 1998-2447, p. 9, 794 So.2d at 868 (holding the evidence established the precarious possessor, Mr. Perez, used the property with the consent and permission of the landowner, Delacroix Corporation).

However, as with any acquisitive prescriptive claim, the Hoses—as the party asserting acquisitive prescription—bore the burden of proving their ancestors in title (the Fischers and the Pagetts) had intent to possess as owner. Thus, the Hoses bore the burden of proving the prior owners of 6331 Annunciation had not used the Driveway and Parking Space pursuant to such a tacit or implied agreement with the owners of 6333 Annunciation, such that the actions by the owners of 6331 Annunciation were "unauthorized" and, therefore, adverse. Because they presented no evidence of the absence of such an agreement (e.g. testimony by prior owners of 6333 Annunciation for thirty years' worth of possession), we conclude the Hoses failed to meet their burden of proving thirty-year acquisitive prescription.

Even assuming arguendo there was no such tacit or implied agreement by which the owners of 6331 Annunciation used the Driveway and Parking Space, we nonetheless find the Hoses failed to prove their thirty-year acquisitive prescription claim. As stated previously, a precarious possessor can change his or her type of possession and begin to prescribe if the precarious possessor provides actual notice of intent to possess as owner. Arguably, the actions taken by the owners of 6331 Annunciation could be construed as actions indicating an intent to possess as owner because the Dedication did not authorize these actions, namely parking cars. *See Garner*, 42,477, p. 7, 968 So.2d at 239 (holding "a right of passage did not grant the greater right of parking" (citing *Irland v. Barron*, 230 So.2d 880, 886-87 (La. App. 2d Cir. 1970))). However, as explained above, if a precarious possessor excludes third parties from using the property but does not exclude the owner of the property, this action can "reasonably be construed as an exercise of the . . . right to use the property, which is not sufficient to 'give the owner some notice that [the] property is in jeopardy.'" *1026 Conti Holding, LLC*, 2022-01288, p. 18, 359 So.3d at 943-44 (citation omitted). In the matter *sub judice*, Mrs. Pagett's testimony established the owners of 6331 Annunciation did not exclude the owners of 6333 Annunciation from using the Driveway and Parking Space. To the contrary, Mrs. Pagett testified the owners of 6333 Annunciation sometimes requested and received permission from the owners of 6331 Annunciation to park in the Parking Space. Mrs. Pagett also testified regarding the Driveway, "It was a common area. We used it. They used it; the owners of 6333 used it; the owners of 6331 used it." The record thus fails to establish the owners of 6331 Annunciation entirely excluded the owners of 6333 Annunciation from using the Driveway and Parking Space for a period of thirty years so as to give the owners of 6333

28

Annunciation notice that their use of the property subject to the Dedication was in jeopardy. For the foregoing reasons, we affirm the trial court's judgment insofar as it denied the Hoses' claim in their Petition for a declaration of their ownership via acquisitive prescription of the Parking Space.

We also affirm the trial court's denial of the Hoses' associated requests for a declaration of a servitude of passage to access the Parking Space, for a permanent injunction that would prohibit the O'Connells from obstructing or disturbing the Hoses' use and enjoyment of the Parking Space, and for damages. As the trial court correctly noted in the reasons for judgment issued with its original judgment, the Hoses' claims for a servitude of passage and permanent injunction were incidental to and dependent upon them succeeding on their acquisitive prescription claim. Having found the trial court correctly denied the latter claim, we also affirm the trial court's denial of the former claims. Similarly, the Hoses' testimony regarding the damages they allegedly suffered related to their inability to *park* in the Parking Space. Yet the Hoses did not have ownership of the Parking Space so as to entitle them to same, and parking in that area was an action which they were not allowed to do per the Dedication. Thus, we find the Hoses' request for damages was also incidental to and dependent on their success on their acquisitive prescription claim. Accordingly, we affirm the trial court's denial of their request for damages.

### Prescription of Non-Use

As previously summarized, in their Petition, the Hoses requested a declaration that the servitude permitting a right of passage or driveway in favor of 6333 Annunciation had been extinguished by prescription of non-use. In the Amended Judgment, the trial court granted the Hoses' claim for prescription of

non-use and extinguished the servitude established by the Dedication in favor of 6333 Annunciation and as a burden on 6331 Annunciation. The trial court further stated the servitude established in the Dedication remained in favor of 6331 Annunciation and as a burden on 6333 Annunciation.

When an appellate court reviews a trial court's judgment regarding a servitude, the appellate court employs the manifest error standard of review. *Thompson v. FRF Props., LLC*, 2017-0152, p. 8 (La. App. 4 Cir. 11/2/17), 229 So.3d 598, 603 (quoting *1026 Conti Condos., LLC v. 1025 Bienville, LLC*, 2015-0301, p. 4 (La. App. 4 Cir. 12/23/15), 183 So.3d 724, 727). Under this standard of review, the "appellate court may not set aside [the] trial court's findings of fact unless they are manifestly erroneous or clearly wrong." *Id.* The appellate court should reverse only if it "find[s] from the record that there is no reasonable basis for the trial court's finding and that the record shows the finding to be manifestly erroneous." *Id.* To determine if the trial court was manifestly erroneous or clearly wrong, the appellate court "must do more than just review the record for some evidence which supports or contradicts the trial court's finding; but rather, it must view the record in its entirety." *Id.* at pp. 8-9, 229 So.3d at 603 (citing *Stobart v. State, Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La. 1993))

"A predial servitude is a charge on a servient estate for the benefit of a dominant estate." La. C.C. art. 646. Louisiana Civil Code Article 705 discusses the predial servitude of passage and provides:

> The servitude of passage is the right for the benefit of the dominant estate whereby persons, animals, utilities, or vehicles are permitted to pass through the servient estate. Unless the title provides otherwise, the extent of the right and the mode of its exercise shall be suitable for the kind of traffic or utility necessary for the reasonable use of the dominant estate.

A predial servitude, such as a servitude of passage, "is extinguished by nonuse for ten years." La. C.C. art. 753. For affirmative servitudes, "[p]rescription of nonuse begins to run . . . from the date of their last use." La. C.C. art. 754. "When the prescription of nonuse is pleaded, the owner of the dominant estate has the burden of proving that he or some other person has made use of the servitude as appertaining to his estate during the period of time required for the accrual of the prescription." La. C.C. art. 764. That is, the party who pleads prescription of non-use is not the one who bears the burden of proof; rather "the burden of proving the use of the servitude during the time necessary to prevent the running of prescription, i.e., during the ten[-]year period" is upon the other party. *Craig v. Finnazzi*, 159 So.2d 732, 733 (La. App. 4th Cir. 1964) (citations omitted).

Per La. C.C. art. 757, "A predial servitude is preserved by the use made of it by anyone, even a stranger, if it is used as appertaining to the dominant estate." According to the Louisiana First Circuit Court of Appeal, "[t]he phrase 'appertaining to the dominant estate' means someone must use the servitude for the purpose of going onto the dominant estate for some legitimate purpose, either to see the owner or for something connected with the use of that property." *Naramore v. Aikman*, 2017-1621, p. 15 (La. App. 1 Cir. 6/4/18), 252 So.3d 935, 945 (citations omitted). Additionally, this Court has explained that "[a]n essential element of proof in extinguishing a servitude for nonuse is whether the servitude was in fact used for *any purpose* consistent with its grant." *Thompson*, 2017-0152, p. 9, 229 So.3d at 603-04 (emphasis added) (citing *Palgrave v. Gros*, 2002-249, p. 4 (La. App. 5 Cir. 9/30/02), 829 So.2d 579, 582). When a document establishing a servitude of passage does not define the mode of ingress or egress yet the document does not limit the servitude to vehicular use, then both vehicular and

pedestrian usage are permissible. *Carrere Holdings, LLC v. Williamson*, 2024-0141, pp. 9-10 (La. App. 4 Cir. 9/17/24), 400 So.3d 241, 248-49 (citing La. C.C. art. 705). For example, in *Thompson*, this Court found the defendant's evidence—which included parking, driving, and/or walking onto the servitude in order to access part of the property—proved usage consistent with the grant of the servitude of passage and was therefore sufficient to interrupt prescription. 2017-0152, pp. 13-14, 229 So.3d at 605-06.

With these precepts in mind, we review the record to determine whether the trial court manifestly erred in finding the O'Connells did not prove use of the servitude in the ten-year period preceding the Hoses' filing of their Petition. Mrs. Pagett testified prior owners of 6333 Annunciation—the Hainkels—extended their fence and added a gate in 1999, after which time she observed the owners of 6333 Annunciation walk down the driveway to access their gate. Mrs. Pagett also testified more generally, "It was a common area. We used it. They used it; the owners of 6333 used it; the owners of 6331 used it." The Dedication established a "right of . . . community passage" and specified it "include[d] the right of egress and ingress to all persons owning or inhabiting" 6331 Annunciation and 6333 Annunciation. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. art. 2046. Applying this legal precept, a clear reading of the Dedication's terms shows it was not limited to vehicular use only; pedestrian usage was also permissible. Though Mrs. Pagett generically stated the owners of 6333 Annunciation "used" the Driveway, she further stated she observed the owners of 6333 Annunciation walking down the driveway to access the gate of

6333 Annunciation. Their action of walking down the Driveway was a purpose consistent with the Dedication.

The problem is that Mrs. Pagett did not specify a time period in relation to her testimony. Mrs. Pagett explained the Hainkels added the gate in 1999 and that she thereafter observed people walking down the driveway to use it, but her testimony was too vague to establish the date of last use. Critically, Mrs. Pagett did not state exactly when she observed the owners of 6333 Annunciation using the Driveway. The only time period she referenced was the Hainkels' addition of the gate in 1999 and her observation of people walking down the driveway *sometime after* the gate was installed; but that was more than ten years before the Hoses filed their Petition in March 2022 and thus insufficient to counter the Hoses' assertion of non-use. Mrs. Pagett's testimony never reached the level of specificity that would allow this Court to establish a timeline of last use.

Notably, in their brief to this Court on this issue, the O'Connells only point to Mrs. Pagett's above-described testimony and the following colloquy during Mrs. O'Connell's testimony:

> Q.  How do you access your backyard?
>
> A.  I have to -- well, if I am in the front of my house, I have to walk across the exposed aggregate to get to my fence. It is a physical impossibility for me to not cross the exposed aggregate to get to the rear of my house.
>
> [Q.]  Is there any other way from this point you just testified to access your backyard?
>
> A.  If I walk through my front door and out my back door.

Though the act of walking would have interrupted the prescription of non-use, Mrs. O'Connell's testimony was also too vague to establish a use of the servitude prior to the Hoses filing their Petition in March 2022 so as to interrupt the ten-year

prescriptive period. That is, even if she did traverse the Driveway at some point prior to the Hoses filing their Petition, Mrs. O'Connell did not affirmatively state that she did in fact "cross the exposed aggregate to get to the rear of [her] house" between purchasing her property in December 2021 and March 21, 2022, when the Hoses filed their Petition. Of note, in their Petition, the Hoses alleged the O'Connells were not even living at 6333 Annunciation at that time. And, crucially, the O'Connells presented no other evidence regarding use of the Driveway and the timing of same.

However, some of the Hoses' own exhibits actually disprove their prescription of non-use claim. As outlined earlier in this Opinion, Mrs. O'Connell testified regarding Plaintiffs' Exhibits 33 and 34, explaining that they depicted her father's work truck parked partially in the Driveway. Another exhibit—Plaintiffs' Exhibit 32—shows that same truck, with Mrs. O'Connell's father preparing to open the front driver side door of the truck. In the picture, the truck was backed into the Driveway, such that the front of the truck was pointed toward the street with the driver side door being on the 6331 Annunciation side of the Driveway rather than the 6333 Annunciation side. The gentleman is clearly standing on the raised aggregate concrete, i.e., the Parking Space part of the Driveway. Another photo (Plaintiffs' Exhibit 36) depicts the same truck clearly parked on part of the raised aggregate concrete. All four of these photographs from early March 2022 predate the Hoses' Petition. Even though the photographs show someone other than the O'Connells using the Driveway, as delineated above, an action by a third party can interrupt prescription. La. C.C. art. 757. Moreover, Mrs. O'Connell's father was using the servitude in a manner "appertaining to the dominant estate" for a "purpose consistent with its grant." *Id.*; *Thompson*, 2017-0152, p. 9, 229

So.3d at 603-04. Mrs. O'Connell testified that she asked her father to park his truck there to uphold 6333 Annunciation's property rights, and the photographs establish Mrs. O'Connell's father both drove and walked for some distance on the servitude. In this latter regard, we have already found a clear reading of the Dedication's terms shows it created a servitude of passage for not only vehicles but also for people walking. Mrs. O'Connell's father's actions of driving his truck on the Driveway and walking on same interrupted the prescription of non-use.

Accordingly, we conclude the trial court manifestly erred in granting the Hoses' claim of prescription of non-use and, correspondingly, in extinguishing the servitude found in the Dedication in favor of 6333 Annunciation. We reverse this part of the trial court's judgment and grant the O'Connells' request in their Answer to reverse this part of the Amended Judgment. We amend the trial court's Amended Judgment to state that the Hoses' claim of prescription of non-use is hereby denied; and the servitude established by the Dedication in favor of 6333 Annunciation and as a burden on 6331 Annunciation remains in place. As amended, we affirm that part of the Amended Judgment. We affirm the Amended Judgment insofar as it held the servitude established by the Dedication in favor of 6331 Annunciation and as a burden on 6333 Annunciation remains in place.

**Vehicles Temporarily Stopped in Driveway**

Next, we consider the part of the Amended Judgment whereby the trial court granted the Hoses' request for injunctive relief regarding their use and enjoyment of the Driveway. In granting this request, the trial court ruled in the Amended Judgment that "[s]aid injunction includes interfering with or obstructing access to a vehicle temporarily stopped in the" Driveway. In their Answer, the O'Connells ask this Court to reverse or modify that part of the Amended Judgment. In particular,

the O'Connells state that while the trial court's order instructed them not to "interfere[e] with or obstruct[] access to the Hoses' vehicle temporarily stopped in the community driveway," this was improper because the Dedication "did not provide the Hoses any temporary parking," such that the trial court erred by "enlarg[ing] the scope of the Dedication of Community Driveway."

As quoted previously, La. C.C. art. 705 defines the servitude of passage as "the right for the benefit of the dominant estate whereby persons, animals, utilities, or vehicles are permitted to pass through the servient estate." Further, as previously noted, the Louisiana Second Circuit Court of Appeal ("Second Circuit") has held "a right of passage [does] not grant the greater right of parking." *Garner*, 42,477, p. 7, 968 So.2d at 239 (citing *Irland*, 230 So.2d at 886-87). For example, in *Garner*, the Holleys contended that because "their property [was] used for commercial purposes, being able to access the property and conveniently park [were] reasonable uses by the dominant estate" as part of their servitude of passage. 42,477, p. 7, 968 So.2d at 239. In contrast, Garner "argue[d] that to allow the Holleys' customers to park alongside his home would expand the servitude of passage into a 'servitude of parking.'" *Id.* The Second Circuit agreed with Garner, noting La. C.C. art. 705 "is unambiguous" that a servitude of passage permits *passage* through a servient estate and "find[ing] no reason to expand [La. C.C. art. 705] to allow vehicles to park on, and not just pass through, a servient estate." *Id.* at pp. 7-8, 968 So.2d at 239. The O'Connells cite *Garner* in their Answer in support for their position that the Dedication did not provide the Hoses with "temporary parking."

However, in *Lacour v. Continental Southern Lines, Inc.*, the Louisiana First Circuit Court of Appeal ("First Circuit") considered an accident which occurred

36

after a bus driver "stopp[ed] [a] . . . bus momentarily for the purpose of receiving [a] passenger" and defined the word "park" relative to vehicles. 124 So.2d 588, 594 (La. App. 1st Cir. 1960).[7] The First Circuit explained "the term 'park'" does "not comprehend[] or includ[e] a merely temporary or momentary stoppage but rather connotes a stoppage with the intent of permitting the vehicle to remain standing for an appreciable length of time." *Id.* (citing *McGehee v. Stevens*, 15 So.2d 897, 899 (La. App. 2d Cir. 1943)). The First Circuit further stated that "neither does the word 'park' in common usage embrace the temporary cessation of motion for the accomplishment of a particular lawful purpose, such as the discharging or receiving of passengers." *Id.* (internal quotation marks omitted) (quoting *McGehee*, 15 So.2d at 899). *See also Standard Cas. Co. v. Fid. & Cas. Co. of N.Y.*, 162 So.2d 26, 30 (La. App. 1st Cir. 1964) (holding "the temporary stopping of a vehicle" for loading branches "does not constitute parking" (citing *Lacour*, 124 So.2d at 594)).

Turning to the matter *sub judice*, as previously explained, the Dedication clearly established a servitude of passage for both cars and people. It does not include a right to park vehicles and, in fact, specifies that "no automobiles or other vehicles are to remain parked in said [D]riveway." However, we disagree with the O'Connells that the trial court enlarged the scope of the Dedication by permitting "temporary stopping." Both *Lacour* and *Standard Cas. Co.* stand for the proposition that "temporary stopping," is not the same as parking. Those cases establish that when a vehicle is temporarily stopped for a defined purpose, such as

---

[7] We note the First Circuit defined "park" in the context of the law now codified at La. R.S. 32:141, which is titled "Stopping, standing, or parking outside business or residence districts." Although that statute is not at issue herein, we find the First Circuit's explanation to be applicable to and helpful in the matter *sub judice*.

picking up a passenger or loading items, this is not the same as a parked vehicle. Thus, while the Dedication stated "no automobile or other vehicles are to remain parked in" the Driveway, this phrasing elicits a temporal restriction to a vehicle's presence in the Driveway rather than an outright ban on a vehicle stopping in Driveway. Stopping refers to briefly halting a vehicle with the intention of returning to it, while parking refers to leaving the vehicle unattended for a period longer than that needed for immediate loading or unloading. The Dedication does not prohibit a vehicle from stopping in the Driveway for a limited time; it merely prohibits a vehicle from parking in the Driveway. In light of the foregoing, we also find the O'Connells' reliance on *Garner* misplaced because that case is distinguishable from this matter. In *Garner*, the dominant estate, which was a commercial property, sought to have its customers park on the area subject to the servitude of passage, thereby indicating a longer parking duration than what the trial court envisioned in this matter when referencing "temporary stopping."

Moreover, as quoted previously, La. C.C. art. 705 states, "Unless the title provides otherwise, the extent of the right and the mode of its exercise [of the servitude of passage] shall be suitable for the kind of traffic or utility *necessary for the reasonable use* of the dominant estate." La. C.C. art. 705 (emphasis added). We hold that the ability to temporarily stop a vehicle is necessary for the reasonable use of the Driveway for both 6331 Annunciation and 6333 Annunciation and enhances the property owners' ability to benefit from the Driveway. We list the following examples of what might constitute "temporary stopping" in the hope that doing so guides the parties' actions in the future. Some examples that would not violate the Dedication's prohibition against parking include a driver in a vehicle pulls in the Driveway, stops, and drops someone off or picks someone up from one

of the properties; a car stops in the Driveway while one unloads groceries from the vehicle; or a car sits in the Driveway while one carries items to or from the backyard of one of the properties. This list is designed to be illustrative rather than exhaustive; but we emphasize that these are activities lasting for a limited time, such that the vehicle in these examples would not be considered to have "remain parked in said [D]riveway" in contravention of the Dedication. We also note this holding is unique to the particular facts and circumstances of this case and further emphasize that it does not expand the scope of La. C.C. art. 705 to permit parking on a servitude of passage.

We therefore affirm the trial court's Amended Judgment insofar as it granted the request in the Hoses' Petition to enjoin the O'Connells' from interfering with or disturbing their use and enjoyment of the Driveway. This affirmation includes the part of the Amended Judgment which stated, "Said injunction includes interfering with or obstructing access to a vehicle temporarily stopped in the community driveway." In light of our affirmation, we deny the O'Connells' request in their Answer that we reverse or modify that sentence in the Amended Judgment.

## Obstructions

Next, we consider whether the trial court correctly denied the Hoses' and the O'Connells' respective requests for removal of certain objects and obstructions from the Driveway. This issue poses a question of law because it involves the interpretation of codal articles, so the standard of review is *de novo. Thiels v. Dennis*, 2009-957, p. 3 (La. App. 3 Cir. 2/3/10), 29 So.3d 715, 717 (applying the *de novo* standard of review in determining whether the trial court erred in refusing to order the demolition of brick columns erected on a servitude of passage).

Turning to the pertinent code articles, La. C.C. art. 697 provides that "[t]he use and extent of [predial] servitudes are regulated by the title by which they are created." Additionally, La. C.C. art. 748 is titled "Noninterference by the owner of servient estate," and it states, in pertinent part, "The owner of the servient estate may do nothing tending to diminish or make more inconvenient the use of the servitude." As the Hoses observe in their brief, this Court has previously held:

> A right of passage may be expressed in a contract or title. When it is so expressed, and the title gives the exact dimensions of the area affected by the servitude, the title must be given full effect. *See Sanders v. Plaquemines Cable TV*, 407 So.2d 524 (La. App. 4[th] Cir. 1981). When the language in the title is clear and unambiguous, and the location and extent of the servitude is unambiguous, then the right of passage must be given full effect by the court. *See White v. Durrwachter*, 431 So.2d 65, 68 (La. App. 1[st] Cir.1983).

*Petrovich v. Trabeau*, 1998-2897, p. 5 (La. App. 4 Cir. 3/7/01), 780 So.2d 1258, 1260.

As the Hoses also observe, this Court has ordered the removal of obstructions that reduce the size of a servitude when a contract or title established the size of the servitude. *See Hymel v. St. John the Baptist Par. Sch. Bd.*, 303 So.2d 588, 592 (La. App. 4th Cir. 1974). Moreover, in reviewing a servitude in which a title established the size, the First Circuit has even ordered the removal of obstructions when the owner of the servient estate did not oppose the obstructions. *Dupont v. Hebert*, 2006-2334, pp. 9-10 (La. App. 1 Cir. 2/20/08), 984 So.2d 800, 807-08. Additionally, the Louisiana Third Circuit Court of Appeal ("Third Circuit") has even ordered the removal of obstructions that did not prevent use of the servitude by the dominant estate. *Thiels*, 2009-957, pp. 4-5, 29 So.3d at 718. In *Thiels*, the Third Circuit explained "the trial court erred by interpreting testimony

regarding the use of the servitude" because doing so was "inconsistent with" La. C.C. arts. 748 and 749. *Id.* (citing *Dupont*, 2006-2334, pp. 9-10, 984 So.2d at 808).

In the matter *sub judice*, the servitude in question was created by title, i.e., the Dedication, and the Dedication set the size of the servitude of passage at "seven feet, two inches front on Annunciation Street, by a depth between equal and parallel lines of One hundred and thirty feet, and is composed of three feet, seven inches taken from lot No. 13 [what ultimately became 6331 Annunciation] and three feet, seven inches taken from the adjoining side of lot No. 14 [6333 Annunciation]." During trial, Mrs. O'Connell testified the fence and palm trees belonging to 6333 Annunciation are within the area established by the Dedication when the following colloquy occurred:

> Q. I will ask you the question again. That is fine. Do you -- did you at the time of your deposition in August and do you still have a fence located in the common driveway?
>
> A. In the rear of the property, yes. There was a fence located there when we bought it.
>
> Q. Do you have palm trees located in the common driveway?
>
> A. I assume they probably are.
>
> Q. You answered yes at your deposition?
>
> A. Yes.
>
> Q. It is your understanding that this Dedication of Community Driveway is still in [e]ffect?
>
> A. Yes.
>
> Q. It runs as you said from the sidewalk -- front of the property all the way to the rear of the property?
>
> A. Yes.

Q.      These things are in the common driveway that you are asking the Court to enforce?

A.      Yes. Among many other things but, yes.

In addition to Mrs. O'Connell's above admissions, the parties stipulated that the 6333 Annunciation obstructions (the fence and trees) block part of the Driveway. Also, the record contains an April 14, 2022 survey prepared by Mr. Simoneaux. When asked whether the 6333 Annunciation fence as depicted on his survey would block one-half of the common driveway, Mr. Simoneaux answered affirmatively. Additionally, Mr. Hose admitted there are certain things associated with his house—6331 Annunciation—that obstruct the Driveway, including a fence, chimney, and air conditioning equipment.

In its written reasons for judgment, the trial court stated, "there was not enough evidence presented at trial to indicate that these obstructions prevent either vehicles or persons from using the servitude as it is defined in the dedication of community driveway." Per *Dupont* and *Thiels*, the trial court erred in considering the use of the servitude in light of the fact that the Dedication established the size of the servitude. Rather, because the evidence established the 6331 Annunciation and 6333 Annunciation obstructions encroached on and changed the size of the servitude (decreased it), the trial court should have automatically ordered their removal. We also note that although the record established no opposition to these obstructions when they were first put in place, this lack of opposition is of no relevance per *Dupont*. Thus, in light of the foregoing testimony and jurisprudence, we reverse the trial court's judgment insofar as it denied the Hoses' and the O'Connells' respective requests for an order directing the removal of the obstructions in the Driveway. In so doing, we also grant that part of the

42

O'Connells' Answer wherein they ask us to reverse the trial court's denial of their claim for removal of the Hoses' obstructions. In *Thiels*, the Third Circuit ordered the defendants to remove the subject obstructions within fourteen days of the finality of the judgment. We likewise include a deadline by which the parties must act: the Hoses and the O'Connells must remove the above-listed obstructions within thirty days of the finality of this Opinion. If the parties have any additional obstructions in the Driveway, they must also remove these.

## The O'Connells' Request for Frivolous Appeal Damages

As stated previously, the O'Connells filed an Answer to Appeal, wherein they not only requested amendment of the trial court's judgment but also frivolous appeal damages under La. C.C.P. art. 2164. Louisiana Code of Civil Procedure Article 2133 delineates when an appellee must answer an appeal. It states, "An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant." La. C.C.P. art. 2133. Further, La. C.C.P. art. 2164 provides:

> The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.

In interpreting La. C.C.P. art. 2164, this Court recently explained that "unless the appeal is unquestionably frivolous, damages will not be granted" because "[a]ppeals are always favored" and "frivolous appeal damages may result in a 'chilling effect . . . on the appellate process.'" *Alexander v. La. State Bd. of Priv. Investigator Exam'rs*, 2023-0159, p. 41 (La. App. 4 Cir. 10/25/24), ___ So.3d ___, ___, 2024 WL 4579179, at *19 (quoting *Alexander v. La. State Bd. of Priv.*

43

*Investigator Exam'rs*, 2019-0778, p. 20 (La. App. 4 Cir. 4/1/20), 293 So.3d 1243, 1256). Additionally, this Court has noted, "[B]ecause the statute [La. C.C.P. art. 2164] allowing the imposition of damages for frivolous appeal is penal in nature, it must be strictly construed in favor of the appellant." *Forrester*, 2023-0336, 0335, p. 12, 380 So.3d at 606 (quoting *Favret v. Favret*, 2022-0820, p. 21 (La. App. 4 Cir. 7/31/23), 371 So.3d 511, 527). Doubt as to whether an appeal is frivolous should be resolved in the appellant's favor. *Id.* at p. 13, 380 So.3d at 607 (quoting *Favret*, 2022-0820, p. 22, 371 So.3d at 527).

A frivolous appeal occurs when "[an appeal] does not present a substantial legal question, if the sole purpose of the appeal is delay, or if the appealing counsel does not seriously believe the view of the law that he advocates." *Alexander*, 2023-0159, p. 41, ___ So.3d at ___, 2024 WL 4579179, at *19 (alteration in original) (quoting *Alexander*, 2019-0778, p. 20, 293 So.3d at 1256). Accordingly, "[D]amages for a frivolous appeal will be awarded if the appellant is attempting to delay the action, if the appellant does not believe what he is advocating, or if the appeal presents no substantial legal question." *Id.* (quoting *Alexander*, 2019-0778, p. 20, 293 So.3d at 1257). The award of frivolous appeal damages "is only proper" when "the proposition advocated is so ridiculous or so opposed to rational thinking that it is evident beyond any doubt that it is being deliberately professed for ulterior purposes." *Id.* Unless the appeal meets one of those criteria, the appellate court will not award frivolous appeal damages even if the "appeal lacks serious legal merit." *Forrester*, 2023-0336, 0335, p. 13, 380 So.3d at 607 (quoting *Favret*, 2022-0820, p. 22, 371 So.3d at 527).

Applying the rule of strict construction against the O'Connells and considering the record in this case, we conclude the Hoses' appeal is not frivolous.

The record does not support a finding that the Hoses filed their appeal for the purpose of delaying the action; their counsel did not seriously believe the law or position advocated; or the appeal presented no substantial legal question(s). Therefore, this matter does not meet the requirements of a frivolous appeal, and we deny the O'Connells' request for frivolous appeal damages asserted in their Answer.

**CONCLUSION**

We affirm the Amended Judgment insofar as the trial court: (1) denied the Hoses' request for a declaratory judgment recognizing them as owners via acquisitive prescription of the Parking Space and a corresponding servitude of passage for access to any vehicle located in the Parking Space; (2) denied the Hoses' request to issue an injunction to prevent the O'Connells from interfering with their use of the Parking Space and a servitude of passage to access the Parking Space; (3) granted the Hoses' request for an injunction ordering the O'Connells not to interfere with their use and enjoyment of the Driveway, noting that "[s]aid injunction includes interfering with or obstructing access to a vehicle temporarily stopped in the . . . [D]riveway"; and (4) denied the Hoses' claim for monetary compensation. We reverse the Amended Judgment insofar as the trial court granted the Hoses' claim for prescription of nonuse, thereby extinguishing the servitude as a burden on 6331 Annunciation but retaining it in favor of 6331 Annunciation. We amend the Amended Judgment to state that the servitude remains as a burden on 6331 Annunciation and in favor of 6333 Annunciation, and we affirm the judgment as amended. We reverse the Amended Judgment insofar as the trial court denied the Hoses' and the O'Connells' respective claims for removal of certain obstructions in the Driveway (the fence and two palm trees associated with 6333

45

Annunciation and the fence, chimney, and air conditioning equipment associated with 6331 Annunciation), and we order the parties to remove their respective obstructions within thirty days of the finality of this Opinion.

In accordance with the above, we grant the O'Connells' Answer in part and deny it in part. We deny the O'Connells' request to reverse or modify that part of the Amended Judgment that enjoins them from interfering with or obstructing access to a vehicle temporarily stopped in the Driveway by the Hoses. We grant the O'Connells' Answer to the extent they have asked us to reverse the trial court's grant of the Hoses' claim of prescription of non-use. We also grant the O'Connells' request in their Answer to reverse the trial court's denial of their request for the removal of the Hoses' obstructions in the Driveway. However, we deny the O'Connells' request for frivolous appeal damages.

## DECREE

For the foregoing reasons, we affirm the April 26, 2024 Judgment in part; we reverse the judgment in part; and we amend the judgment in part and affirm it as amended. We also grant the O'Connells' Answer in part and deny it in part, and we deny their request for frivolous appeal damages.

**AFFIRMED IN PART; REVERSED IN PART; AMENDED IN PART AND AFFIRMED AS AMENDED**