Judge Paula A. Brown 11 This, matter involves the termination of a predial servitude. Appellants, FRF Properties, LLC and Jody Ferchaud (collectively, “FRF”), appeal the trial court’s judgment which .granted the Petition to Terminate Servitude for ,Non-Use .(the, “Petition”) filed on behalf of Appellees, Angele Schott Thompson and Alphonse M. Thompson, Sr. (collectively, the “Thomp-sons”). For the reasons that follow, we reverse. STATEMENT OF FACTS The Thompsons are the owners and occupants of property located at 384 Audubon Street (“384 Audubon”) in New Orleans, Louisiana, Lot 11-A. FRF owns property located at 390 Audubon Street (“390 Audubon”) in New Orleans, Louisiana, Lot 13-A—which is presently a four-plex. Through an act of sale dated June 2, 1967, the Thompsons’ ancestor in title ere-ated a servitude of right-of-way in favor Lot 13-A for the purpose of maintaining a driveway to provide access to Lot 13-A. The servitude terms stated in part: There, is hereby created and reserved, in favor of lot 13-A, the property herein conveyed on the side toward Pitt Street and in favor of the present and future owners of said lot 13-A, a servitude of right-of-way for the purpose of maintaining and using a driveway for access to the |2said lot 13-A, said servitude affecting a strip of land fronting 3 feet on Audubon Street by a depth between equal, and parallel lines of 101 feet, 4 inches, 5 lines, a width in the rear of 3 feet, said strip of land commencing at the point of intersection of the line of Audubon Street and the line dividing lot 11-A from lot 13-A, all as shown on the aforementioned plat of survey attached hereto. The properties are,,adjacent to each other. The properties are separated by a driveway/ which: consists of two parallel lines of concrete strips—one strip on 384 Audubon, the servient estate, and'the other strip on 390 Audubon, the dominant estate. A three feet wide space exists between the parking strips.[1] The servitude[2] runs from the street' to a garage structure located in the rear of the 390 Audubon property. On or about March 31, 2016, Jody Fer-chaud took possession of the lower unit of the four-plex at 390 Audubon property, the unit nearest to Prytania Street. A dispute ensued between the Thompsons and Mrs. Ferchaud. The Thompsons alleged that Mrs. Ferchaud improperly-parked her vehicle on the servitude area,'blocked their view, destroyed them vegetation, and threatened the Thompsons. As a result of the dispute, the Thompsons filed their. Petition. The Petition alleged, in part, that since the Thompsons moved to 384 Audubon on February 3, 2000, a fence[3] hád been erected across the 390'Audubon side of the parking strips and that the' servitude had not been used to access the rear of the property. The Petition | ¡further alleged that Mrs. Ferchaud, by parking her vehicle on the servitude, violated its original intent—to facilitate passage to the rear of the' property. Accordingly, the Thomp-sons' sought the following: 1) to extinguish the servitude for nonuse; 2) to enjoin Mrs. Ferchaud from parking on any portion of . the servitude or damaging the Thompsons’ vegetation; and 3) monetary damages. The trial court.conducted a trial on the merits regarding the .termination of the servitude and the Thompsons’ request for damages on July 8, 2016.[4] In addition to their testimony, the Thompsons called Peter Dodge, Jeanne Landry, and Ivan Man-dich as supporting witnesses.[5] Peter Dodge testified that he lived at his Broadway Street home since 1976. His house is located directly behind 384 Audubon and partially behind 390 Audubon. Mr. Dodge stated the rear of the property located at 390 Audubon was generally unkempt and that a fence separated the two Audubon Street properties. Mr. Dodge said that he had never seen a vehicle .traverse the parking strips between 384 .and 390 Audubon. He also stated that he had not seen vehicles parked in the rear of the properties during the time he has lived in his Broadway home. Jeanne Landry, a regular visitor and long-time friend of the Thompsons, testified that a full row- of azaleas on the Thompsons’ side of the'two. parking strips [4had been cut. Similar to Mr. Dodge,- Ms. Landry said the rear area of 390 Audubon was neglected and she noted a chain fence had been erected. Ms. Landry also testified that she never saw a vehicle parked in the driveway of the four-plex, nor had she ever seen a vehicle travel across the parking strips to enter the rear of the .four-plex. Ms. Landry also,identified a photograph depicting the Thompsons’ azalea bushes and a vehicle parked on the parking strips; however, she could not confirm whether the azaleas impeded the driveway or whether the vehicle was actually parked on the 384 Audubon parking strip. Ivan Mandich, a nearby neighbor of the Thompsons,, said he regularly passed 384 and 390 Audubon Street. According to Mr. Mandich, he had never seen any vehicles drive across the parking strips between the adjacent properties, nor had he-ever seen any vehicles parked there. He added a. vehicle could not easily park there because of the narrow passage way and .the presence of a stump. Mrs. Thompson verified that she had lived at, 390 Audubon since 2000. She met Mrs.- Ferchaud on- March 31, 2016. .Mrs. Thompson testified that after Mrs. Fer-chaud. drove up in her vehicle, she told Mrs. Ferchaud that she could not park on the parking strips^ In response, she said Mrs. Ferchaud screamed that “as the owner, she could park wherever she wanted.” Mrs. Thompson stated that on the ensuing Sunday, April 2,' 2016, she saw Mrs; Fer-chaud clip her azalea bushes. Mrs. Thompson described the servitude area from its rear portion towards Audubon Street. She noted that there was. a chain link fence, “a bunch of overgrown stuff,” and a tree stump in .the area of the servitude. Mrs. Thompson .1 .-¡testified that the structure in the rear of 390 Audubon had collapsed and only a concrete slab remains in its place. Mrs. Thompson said two parallel concrete parking strips remain on the front' portion cjf the lot—une on the 390 Audubon side of the property and the second on her property at 384 Audubon. Mrs. Thompson testified that the servitude had not been used for passage since she and her husband'purchased their home in February 2000 and she never consented to allowing anyone to park' on the parking strip located on 384 Audubon. Mr. Thompson testified that he had never given anyone permission to park on the 384 Audubon parking strip and no one had ever sought his permission to do so. He identified photographs of his property and the géneral area of the' servitude. Mr. Thompson complained that Mrs. Ferchaud continued to park on the 384 Audubon parking strip, notwithstanding a consent judgment which precluded her from doing so. He said he had never seen anyone access the rear of 390 Audubon by driving oh the parking strips, nor had he seen anyone walk on the 384 Audubon parking strip to access the chain link fence area. Mr. Thompson also denied planting any vegetation to block access to the servitude. FRF countered with testimony from Erin Winters, Vanessa Manuel—a former tenant at 390 Audubon—and Dr. Bruce Raeburn—a current tenant at 390 Audubon. Erin Winters, whose uncle was married to Mrs. Ferchaud, testified that she managed FRF from 2002 to 2010. She allowed tenants to park on the left side of the 390 Audubon building on a seniority basis for a fee. She testified that the Thompsons never contacted her to complain about the parking. On" cross- | examination, she admitted she did not necessarily receive complaints; she also said she was unaware a servitude existed on the property. Ms. Manuel testified that she lived at 390 Audubon from June 2006 until May 2Ó07. She said that when she resided there, she parked her vehicle in the driveway between 384 and 390 Audubon Street. When she exited her vehicle, she accessed her unit through the front door. Ms. Manuel also recalled an occasion when her mother parked her truck in the driveway and her truck door was damaged by Mrs. Thompson. According to Ms. Manuel, Mrs. Thompson admitted dragging a garbage can down the space between her home and the parking strips, scraping the truck with the garbage can. Ms. Manuel said she reported the incident to the police, but when the police arrived, Mrs. Thompson told them that the driveway was a shared easement. According to Ms. Manuel, the police officer advised her that he could not write a report, but told her that she could seek damages in civil court. Ms. Manuel testified that the Thompson’s had never told her she could not park on the parking strips. Dr. Bruce Raeburn, a forty-year resident of 390 Audubon, testified that during thirty-four of the forty years he resided there, he routinely saw people turn onto the street and then drive onto the parking strips and park their vehicles. His testimony included the following: Q. In the 40 years that you’ve resided there, have you seen people driving— turning onto the street, driving on this [sic] drive strips and parking their vehicles? A. Routinely for at least 34 of the 40 years. [[Image here]] |7Q. I just want to ask you one more thing to make sure we understand here. If someone is driving on Audubon Street and turns on to this property, whether it’s a tenant or a guest, they would normally come up on these parking strips? A. Yes. Q: So they would be accessing this building by coming over those parking strips? A. That’s correct. That’s routinely what the tenants who lived in either apartment azalea or apartment C did. Dr. Raeburn also testified that Ms. Manuel, who previously resided in “apartment azalea” at 390 Audubon, complained to him in 2007 or 2008 about her dispute with the Thompsons over the parking strip. Mrs. Ferchaud testified that she moved into 390 Audubon on March 31, 2016. She identified herself as the owner to Mrs. Thompson. Shortly thereafter, Mrs. Thompson told her that she could not park on the “parking pad.” Mrs. Ferehaud said she did not know that a servitude existed until she went to the Conveyance Office and reviewed copies of the act of sale. She said she learned that she had a right to use the servitude to access 390 Audubon; however, she understood the servitude terms did not give her permission-to park on the 384 Audubon parking strip. Mrs. Ferchaud testified that she now parks her vehicle on the FRF portion of the parking strips; but she steps onto the 384 Audubon parking strip to access her front door when she exits her vehicle. Mrs. Ferchaud added that she did, in fact, cut the Thomp-sons’ azalea bushes because they impeded her ability to exit her vehicle without damaging her car door. On cross-examination, IsMrs. Ferchaud conceded that she did not know anything about how people had parked their cars before she arrived. Following the trial, on July 15, 2016; the trial court rendered judgment in favor of the Thompsons, terminating the servitude for nonuse. The judgment also dismissed the Thompsons’ damages claims. FRF filed a Motion for New Trial on July 22, 2016. The trial court denied the motion on November 22, 2016 and provided written reasons for the judgment.[6] Thereafter, FRF filed the present appeal. STANDARD OF REVIEW In 1026-Conti Condominiums, LLC v. 1025 Bienville, LLC, 2015-0301, p. 4 (La. App. 4 Cir. 12/23/15), 183 So.3d 724, 727, writ denied, 2016-0144 (La. 3/14/2016), 189 So.3d 1067, this Court espoused: Judgments regarding servitudes are reviewed under the manifest error standard of review. Allen v. Cotten, 2011-1354, p. 3 (La. App. 3 Cir. 5/2/12), 93 So.3d 681, 683 [citations omitted]. An appellate court may not set aside a trial court’s findings of fact unless they are manifestly erroneous or clearly wrong. Id. (citing Stobart v. State, Dep’t of Transp. and Dev., 617 So.2d 880 (La. 1993)). To reverse under -the manifest error rule, an appellate court must find from the record that there is no reasonable basis for the trial court’s finding and that the record shows the finding to be manifestly erroneous. Id. (citing Stobart v. State, Dep’t of Transp. and Dev., 617 So.2d 880 . (La. 1993)). In determining whether the trial court’s finding was manifestly erroneous or clearly wrong, a reviewing court must do more than just review the record for some |9evidence which supports or contradicts the trial Court’s finding; but rather, it must view the record in its entirety. Stobart, 617 So.2d at 882. DISCUSSION A predial servitude is a charge on a servient estate for the benefit of the dominant estate. La. C.C. art. 646. La. C.C. art. 705 provides in part: The servitude of passage is the right for the benefit of the dominant- estate whereby persons, animals, utilities; or vehicles are permitted to pass through the servient estate. Unless the title provides otherwise, the extent of the right and.the mode of its exercise shall be suitable for the kind of traffic or utility necessary for the reasonable use of the dominant estate. A predial servitude may be extinguished by nonuse for ten years. La. C.C. art. 753. Prescription of nonuse begins to run'for affirmative servitudes from the date of their last use. La. C.C. art. 754. “When the prescription of nonuse is pleaded, the owner of the dominant estate has the burden of proving that he or some other person had made use of the servitude as appertaining to his estate during the period of time required for the accrual of the prescription.” La. C.C. art. 764. An essential element of proof in extinguishing, a servitude for nonuse is whether the servitude was in fact used for any purpose consistent with its grant. Palgrave v. Gros, 2002-249, p. 4 (La. App. 5 Cir. 9/30/02), 829 So.2d 579, 582. FRF raises two. assignments; of error in support of its claim, that the trial court erred in terminating the servitude for non-use. First, FRF argues that it offered sufficient testimony to prove at least a single use in the past ten years. Next, FRF asserts the trial court erred in terminating the servitude for what it | Tntermed “illegal uses,” namely, parking on the servitude. We shall first examine FRF’s argument that it proved use within the prescriptive period. FRF cites to Ms. Manuel’s and Dr. Raeburn’s testimony as documented proof of use of the servitude within the past ten years. In rebuttal, the Thompsons contend that although the driveway area consists of two parking strips—one on the servient estate and the' other on the dominant estate—FRF failed to prove that any alleged use occurred on the 384 Audubon parking strip. Our review of the trial court’s reasons for judgment establishes that the trial court did, in fact, agree with the Thomp-sons that neither the. testimony of .Ms. Manuel nor Dr. Raeburn affirmatively showed that Ms. Manuel or others parked on or used the 384 Audubon parking strip in any way within the past ten years. With reference to Ms. Manuel, the trial court' determined * that her testimony, wherein she stated that she had “parked in the driveway,” did not conclusively prove that she parked on the 384 Audubon parking strip. The trial court found Ms. Manuel’s testimony was vague, in that Ms. Manuel did not specify whether she had ever “áctually used any portion of the servitude to access passage to the duplex.” The trial court also concluded Ms. Manuel did not provide, .objective evidence to show that her mother parked on the servitude portion of the parking strips, Similarly, the trial court found Dr. Rae-burn’s testimony was “fatally vague.” In its reasons for judgment, the trial court noted that while Dr. Raeburn testified individuals used the parking strips, he failed to specify when the use occurred, orJjjthat the 384 Audubon parking strip was specifically used. The trial court further reasoned that only Mrs. Ferchaud gave specific testimony that she drove on the 384 Audubon parking strip for the specific purpose of parking her vehicle to gain _ access to 390 Audubon. However, the trial court concluded that Mrs. Ferchaud’s actions were not dispositive of use because it occurred in 2016—after the ten years of nonuse of the servitude lapsed. Upon careful scrutiny of the record in its entirety, particularly the testimony of Dr. Raeburn, we conclude there is no reasonable factual basis upon which the trial court based'its decision to terminate the servitude. Notably, the trial court- did not find that Dr. Raeburn’s testimony lacked credibility. Rather, the trial court deemed his testimony vague. The record contradicts the trial court’s conclusion- for the following reasons. . First, the record shows that Dr. Rae-burn expressly testified that he routinely saw people park- their vehicles and drive onto the parking strips during thirty-four of the forty years he lived at 390 Audubon. Dr. Raeburn, who described himself as a current friend of the Thompsons, stated that he lived at 390. Audubon years before the Thompsons moved to 384 Audubon in February 2000. ■ The Thompsons brought their petition to terminate the servitude in 2016. Thus, the trial court’s finding that Dr. Raeburn’s testimony lacked detail as to when he observed individuals driving on the parking strips, erroneously, miscalculated the passage of time. Based upon Dr. Raeburn’s testimony, the latest he could have made his I ^observations regarding use of the parking strips would have been 2010—well within the ten-year time period to interrupt prescription for nonuse of servitude. Secondly, the record shows that Dr. Raeburn did, indeed, testify with specificity that individuals had driven, parked, and walked on the servitude. As referenced herein, Dr. Raeburn’s testimony affirmatively states that he saw individuals drive and park onto the parking strips in order to access 390 Audubon. He also .said he saw occupants of his upstairs unit come down the exterior stairs and.walk onto, the “parking pad.” He did not know of anyone who limited themselves to “not walking on the three-foot servitude.” Moreover, Dr. Raeburn’s testimony—-that Ms. Manuel complained to him in 2007 or 2008 about her dispute with Mrs. Thompson over use of the 384 Audubon strip—bolsters Ms. Manuel’s testimony regarding the use of the parking strips within the requisite ten-year prescriptive period. We find Dr. Rae-burn’s testimony that he saw individuáis drive their vehicles onto and park on both parking strips to access 390 Audubon, as well as walk on the servitude, necessarily equates to use of the servitude. Next, we turn to FRF’s claim that the trial court erroneously terminated the servitude because'the court found that any use was for illegal parking. At the outset, we note the record refutes that claim. Upon finding that FRF had failed to prove any actual use of the servitude within the past ten years, the trial court opined in its reasons for judgment that “the court need not address whether or not parking on the servitude operated to toll the prescriptive period.” Given that the trial court did not terminate the servitude because it was improperly used for 11sparking and this Court’s determination that the trial court erred in finding FRF did not proye use, this assignment of error is moot and need not be addressed by this Court. Notwithstanding, we shall review .this-alleged error in light of the Thompsons’ contention that the only “use” demonstrated by FRF— parking on the servitude—should. be deemed insufficient to interrupt prescription. . . The Thompsons argue that parking on the servitude was inconsistent with the servitude’s purpose, which they allege was to providé passage to the rear of 390 Audubon. They assert that in order to interrupt prescription for nonuse, the use must be a use contemplated under the grant of the servitude, relying on Palgrave, 2002-249, p. 4, 829 So.2d at 582. In Palgrave, a servitude of passage granted the appellants the right to' bring their boats in and out of Bayou Barataría. The Palgrave Court' determined that the appellants’ actions in walking across the servient estate did not constitute use of the servitude sufficient to interrupt prescription. Id. at pp. 6-7, 829 So.2d at 583-584. In conjunction therewith, the Thompsons contend that parking on á servitude that was created to facilitate passage to the rear of the dominant estate does not constitute a use consistent with the servitude’s creation. FRF does not dispute that the servitude created, herein is a servitude of passage and not a servitude of parking. However, FRF challenges the Thompsons’ assertion that the servitude was created strictly to allow passage to the rear , of 390 Audubon. FRF asserts that the servitude’s creation was to permit access to any part of the dominant estate. FRF relies on the servitude’s terms which state, in |upart, that the servitude created is “a servitude of right-of-way for the purpose of maintaining and using a driveway for access to the said Lot 13-A...” (Emphasis added). “When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.” La. C.C. art. 2046. Applying this legal precept to the present matter, we must agree with FRF that a clear reading of the servitude’s terms shows its purpose was to create a servitude of passage to access Lot-13A (390 Audubon), not just to the rear of the property. Given our determination that the servitude grants access to the entirety of 390 Audubon, it cannot be terminated solely because it was not also used to access the rear of the property. Express statutory authority provides that partial use of the servitude constitutes use of the whole. See, La. C.C. art. 759. Therefore, any use of a portion of the area burdened with a predial servitude interrupts the prescription of nonuse as to the entire area. Claitor v. Brooks, 2013-0178, p. 7 (La. App. 1 Cir. 12/27/13), 137 So.3d 638, 643-44. Upon review, we find FRF’s evidence—which showed parking, driving and/or walking onto the servitude in order to access 390 Audubon—proves usage consistent with the servitude’s grant, and thereby, sufficient to interrupt prescription. I ^CONCLUSION Based on the foregoing reasons, we find the trial court’s judgment to terminate the servitude for nonuse was manifestly erroneous. FRF met its burden of proof. Accordingly, the judgment is reversed. REVERSED . Throughout the record, the parties interchangeably refer to the parking strips as the "driveway,” "drive strips,” or "parking pads.” For consistency purposes, this opinion will- reference .the area as "parking strips" where applicable. . The servitude is also referred to as "the 384 Audubon parking strip” in this opinion. . The Thompsons represented' that the1 fence was constructed by FRF or its ancestors in title. . Prior to trial, the-trial court issued a'temporary restraining order on .April 6, 2016. In response to the restraining order, FRF filed a Motion to Dissolve Temporary Restraining Order. On April 20, 2016; a judgment was rendered dissolving the restraining order and ordering the Thompsons to pay $700.00 in costs to FRF. By consent, the parties agreed to a preliminary injunction which enjoined FRF from parking on any portion of the servitude and from having any contact with the Thompsons. .As referenced, the parties reached a consent judgment on the temporary restraining order. Accordingly, the bulk of the trial testimony summarized herein focuses on evidence relevant to the servitude. . The trial court originally drafted a judgment that denied relief fo Plaintiffs' motion for new trial. Upon recognizing the error, the trial court vacated that judgment; and on the same date, issued the present judgment and incorporated reasons which denied Defendants’ motion for new trial.