| LOUIS V. HOSE AND JULIE H. | * | NO. 2024-CA-0493 |
|---|---|---|
| HOSE | | |
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| JAMES SCOTT O'CONNELL | | FOURTH CIRCUIT |
| AND WHITNEY ELIZABETH | * | |
| O'CONNELL | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-02408, DIVISION "M"
Honorable Paulette R. Irons, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *
**ON APPLICATION FOR REHEARING**
(Court composed of Judge Paula A. Brown, Judge Tiffany Gautier Chase, Judge
Dale N. Atkins)

**BROWN, J., CONCURS IN THE RESULT**

**CHASE, J., CONCURS IN THE RESULT**

Katy K. Sinor
501 Jewel Street
New Orleans, LA 70124

Howard E. Sinor, Jr.
GORDON, ARATA, MONTGOMERY, BARNETT, MCCOLLAM,
DUPLANTIS & EAGAN, LLC
201 St. Charles Avenue, 40th Floor
New Orleans, LA 70170-4000

        COUNSEL FOR PLAINTIFFS/APPELLANTS, Louis V. Hose and Julie H.
Hose

David M. Fink
ONEBANE LAW FIRM, APC
400 East Kaliste Saloom Road, Suite 300
Lafayette, LA 70502-3507


      COUNSEL FOR DEFENDANT/APPELLEE, James Scott O'Connell and Whitney Elizabeth O'Connell

**REHEARING GRANTED; GRANTED IN PART AND DENIED IN PART**
**AUGUST 14, 2025**

We grant a limited rehearing in this matter concerning a shared driveway ("Driveway") created by a "Dedication of Community Driveway" ("Dedication") to consider the propriety of our Opinion issued on May 8, 2025 ("Original Opinion"), in light of the arguments raised by Appellants, Louis V. Hose ("Mr. Hose") and Julie H. Hose ("Mrs. Hose") (collectively the "Hoses"), in their Application for Rehearing. Appellees are James Scott O'Connell ("Mr. O'Connell") and Whitney Elizabeth O'Connell ("Mrs. O'Connell) (collectively the "O'Connells"). Upon reconsideration, we deny relief regarding the decision in our Original Opinion not to consider the Hoses' "Appellee Brief." Though we find merit in the Hoses' arguments regarding precarious possession, we also deny relief and maintain the holding in our Original Opinion that the Hoses failed to prove thirty-year acquisitive prescription. Finding merit in the Hoses' claim regarding the time period a court must consider for a prescription of nonuse claim, we grant relief and modify our Original Opinion so as to affirm the trial court's grant of the Hoses' prescription of nonuse claim. We further modify our Original Opinion to hold that the servitude in favor of the O'Connells' property, 6333 Annunciation Street ("6333 Annunciation"), has been extinguished by prescription of nonuse.

1

Having now found that the servitude no longer remains in favor of 6333 Annunciation, we withdraw the order in our Original Opinion directing the Hoses to remove their obstructions in the Driveway. We modify our Original Opinion to hold that the O'Connells' request in their Answer for us to order the Hoses to remove their obstructions is denied.

Additionally, in reviewing the Hoses' request that we revisit the issue of damages, we find the record lacks proof that the servitude in favor of the Hoses' property, 6331 Annunciation Street ("6331 Annunciation"), remains in place. Accordingly, we modify our Original Opinion by withdrawing our affirmation of the trial court's ruling that the servitude remains in favor of 6331 Annunciation. We amend the trial court's Amended Judgment to remove the finding that the servitude remains in favor of 6331 Annunciation and affirm as amended. Because the Hoses' right to the following requests depended upon a finding that the servitude remained in favor of their property, we also affirm the trial court's denial of their request for damages for trespass and abuse of rights; withdraw the order in our Original Opinion directing the O'Connells to remove their obstructions in the Driveway; and we modify our Original Opinion to hold that the trial court's grant of the Hoses' request to enjoin the O'Connells from interfering with or disturbing their use and enjoyment of the Driveway is reversed.

In all other respects not addressed by this Rehearing Opinion, our Original Opinion stands and is affirmed.

**DISCUSSION**

**Procedural Due Process**

In their Application for Rehearing, the Hoses first assert this Court violated their procedural due process rights by removing their opportunity to defend their

2

property when the Opinion struck their "Appellee Brief" filed in response to the O'Connells' Answer. The Hoses state that while the Uniform Rules of the Courts of Appeal and this Court's Local Rules address what must be included in an appellant brief and an appellant reply brief, "the rules do not state or even intimate that those briefs include a response to an Answer to Appeal." They contend that "the absence of a procedural rule on responding to an Answer to Appeal" means "it was logical to respond to the arguments advanced by the O'Connells['] . . . [A]nswer with an 'Appellee' brief." The Hoses further argue that while the Uniform Rules of the Courts of Appeal permit an appellate court to strike a non-conforming brief, their "Appellee Brief" did not violate any rule, such that this Court had no authority to strike it.

For the reasons delineated in our original Opinion, we find there is no merit to this contention. We reiterate that we have found no basis in the Louisiana Code of Civil Procedure, the Uniform Rules of the Courts of Appeal, this Court's Local Rules, jurisprudence, or any other source of law for the Hoses' "Appellee Brief" nor for their "Appellants' Answer to Appeal" and the O'Connells' "Appellee/Defendant Reply Brief." As stated in our original Opinion, the Hoses could have and should have addressed the O'Connells' Answer in either their Appellant Brief or their Appellant Reply Brief. We also reiterate our concern that consideration of such pleadings "would invite an endless sequence of counter-appeals" in the future. *Freeman v. Freeman*, 552 So.2d 636, 639 (La. App. 2d Cir. 1989). As it is, in this matter, the Hoses filed their Appellant Brief and their Appellant Reply Brief, and the O'Connells filed their Appellee Brief and their Answer, all of which were permissible filings. However, between the Hoses and the O'Connells, they asked this Court to consider three additional pleadings.

3

While the Hoses now argue in their Application for Rehearing that the absence of a procedural rule regarding a response to an answer equates to permission to file an "Appellee Brief" to respond to an answer, we disagree. Rather, we reason that the absence of such a procedural rule instead equates to the inability to file such a pleading. The Uniform Rules of the Courts of Appeal specify the documents that parties can file with an appellate court, such as an appellant brief, appellee brief, appellant reply brief, and an answer. It is axiomatic that if a party tries to file a document that is not one of the types delineated in the Uniform Rules, such as an appellant filing an "appellee brief" to respond to an answer, this is not allowed. That is, the Uniform Rules simply list the pleadings parties are allowed to file rather than attempting to delineate an exhaustive list of the types of pleadings that a party may try to file that are disallowed.

We also disagree with the Hoses' contention in their Application for Rehearing that this Court deprived them of procedural due process. As delineated in our original Opinion and repeated above, the Hoses could have and should have addressed the O'Connells' Answer in their Appellant Brief or their Appellant Reply Brief but chose not to do so. Additionally, we noted in our Original Opinion that in the *Freeman* case, the Louisiana Second Circuit Court of Appeal specifically stated the appellant could rebut the appellee's answer to appeal in her appellant reply brief. 552 So.2d at 639. The Hoses could have located that case and determined this course of action on their own but failed to do so. Thus, the lack of a response to the O'Connells' Answer was of the Hoses' own making, not a result of this Court depriving them of their rights. Therefore, we maintain our decision not to consider the Hoses' "Appellee Brief" and deny the relief requested in the Hoses' Application for Rehearing in this regard.

## Thirty-Year Acquisitive Prescription

In the following two sections, we address the Hoses' arguments in their Application for Rehearing regarding our resolution of their thirty-year acquisitive prescription claim. The Hoses' two arguments both concern the issue of precarious possession. For the following reasons, we agree with the Hoses' two arguments, but we nonetheless find their acquisitive prescription claim fails. Accordingly, we deny the relief requested by the Hoses in their Application for Rehearing and maintain the holding in our Original Opinion that the Hoses failed to prove thirty-year acquisitive prescription.

### *1. Who Bore the Burden of Proving Whether the Possession was Precarious*

First, the Hoses assert this Court incorrectly imposed the burden of proof on them to disprove precarious possession because it was the O'Connells who bore the burden to prove precarious possession. The Hoses contend that because the O'Connells bore the burden of proof but presented no evidence of a tacit or implied agreement, no evidence of permission to possess the Parking Space, and no evidence of any fact suggesting precarious possession, this Court erred in denying their acquisitive prescription claim.

We agree with the Hoses that our original Opinion misstated who bore the burden of proof. Louisiana Civil Code Article 3427 provides that "[o]ne is presumed to intend to possess as owner unless he began to possess in the name of and for another." In interpreting a prior version of La. C.C. art. 3427, the Louisiana Third Circuit Court of Appeal ("Third Circuit") explained that a possessor is aided by a presumption of ownership, such that it is "incumbent on the [landowner] . . . to rebut this presumption" that the possessor possessed as owner. *Town of Broussard v. Broussard Volunteer Fire Dep't*, 357 So.2d 25, 28 (La. App. 3d Cir.

1978).[1] Additionally, the Louisiana First Circuit Court of Appeal ("First Circuit") has held that "it is the landowner's duty to show another's use of his property was merely an accommodation." *Katz v. Creel*, 2023-1136, p. 7 (La. App. 1 Cir. 6/14/24), 391 So.3d 1119, 1124 (citing *Boudreaux v. Cummings*, 2014-1499, pp. 4-5 (La. 5/5/15), 167 So.3d 559, 562).[2] In light of that jurisprudence, we agree with the Hoses that the O'Connells bore the burden of proving precarious possession. We also agree with the Hoses that the O'Connells did not carry their burden of

---

[1] The Third Circuit was interpreting La. C.C. art. 3488, which stated, "As to the fact itself of possession, a person is presumed to have possessed as master and owner, unless it appears that the possession began in the name of and for another."

[2] The Hoses also quote from *Boudreaux* in this section of their Application for Rehearing, stating that the Louisiana Supreme Court "recognized that the possessor generally bears the burden of proof" but then "correctly held: '[t]he possessor is aided in this burden by a presumption that he possessed as owner'" (La. C.C. art. 3427), such "that '[i]t was, therefore, incumbent on plaintiff [landowner] to rebut the presumption' and show that the 'possession was precarious.'" (Alterations in original.)

The quote included in the Hoses' Application for Rehearing from *Boudreaux* was taken from a paragraph in which the Louisiana Supreme Court summarized the argument by the plaintiff, Mr. Boudreaux, about the nature of his possession. With the excerpt from the Hoses' Application for Rehearing in italics, the entire paragraph and the subsequent paragraph read:

> Boudreaux asserts that his possession of the right of passage is presumed to be on his own behalf, pursuant to La. [C.C.] art. 3427, which provides, "[o]ne is presumed to intend to possess as owner unless he began to possess in the name of and for another." *Thus, it is the landowner's duty to show that such use was merely an accommodation.* Boudreaux argues that Cummings' failure to object to his use of the right of way does not amount to consent by the landowner, i.e., precarious possession.
>
> Conversely, Cummings contends Boudreaux was merely using the right of way with his or the Weills' permission in a gesture of neighborly accommodation. Thus, acquisitive prescription could not run in Boudreaux's favor absent a showing of actual notice of his commencement of adverse possession.

*Boudreaux*, 2014-1499, pp. 4-5, 167 So.3d at 562 (emphasis added). The sentence quoted by the Hoses appears between two other sentences summarizing Mr. Boudreaux's position, and it appears in the paragraph preceding a summary of the argument made by the defendant, Mr. Cummings. Based on this juxtaposition, it is possible that the Louisiana Supreme Court was merely summarizing Mr. Boudreaux's argument rather than stating a rule of law.

Nonetheless, as explained in the body of this Rehearing Opinion, the Third Circuit has also placed the burden of proof on the landowner (in *Town of Broussard*), and the First Circuit has too (in *Katz* citing to *Boudreaux*). Hence, we agree with the Hoses about the landowner—or the servient estate in the case of a servitude—bearing the burden of proof.

proving that the owners of 6331 Annunciation parked in the Parking Space with the tacit or implied permission of the owners of 6333 Annunciation.

*2. Whether Parking in the Parking Space was Precarious or Adverse Possession*

Second, the Hoses assert the servitude as created by the Dedication did not render the possession of the Parking Space by their ancestors in title precarious. As the Hoses explain, the owners of 6331 Annunciation were merely precarious possessors of a right of passage on the Driveway but did not have the right to park in the Parking Space, noting the Dedication expressly forbade parking in the Driveway. Accordingly, as the Hoses argue, the parking in the Parking Space by the owners of 6331 Annunciation constituted adverse possession for acquisitive prescription purposes. The Hoses assert that because this Court legally erred in holding the possession by the owners of 6331 Annunciation was precarious, we should reverse the denial of their acquisitive prescription claim.

As quoted in our original Opinion, "[a]cquisitive prescription does not run in favor of a precarious possessor or his universal successor." La. C.C. art. 3477. "[A] precarious possessor" is "one who possesses with leave[] or consent." *Succession of Kemp v. Robertson*, 316 So.2d 919, 923 (La. App. 1st Cir. 1975) (citations omitted). However, a precarious possessor can change his type of possession and begin to prescribe by undertaking certain actions. *1026 Conti Holding, LLC v. 1025 Bienville, LLC*, 2022-01288, pp. 15-16 (La. 3/17/23), 359 So.3d 930, 942. A precarious possessor "commences to possess for himself when he gives actual notice of this intent to the person on whose behalf he is possessing." La. C.C. art. 3439. Additionally, La. C.C. art. Article 760 provides that "[a] more extensive use of the servitude than that granted by the title does not result in the acquisition of additional rights for the dominant estate *unless it be by acquisitive prescription*."

7

(Emphasis added.) Therefore, in a servitude situation, the dominant estate can gain additional rights if he gives notice to the servient estate and the conditions for acquisitive prescription are met.

Discussing the actions of a defendant-possessor who had access to a strip of land pursuant to a servitude, the Third Circuit explained:

> [T]he acts of possession of defendant were little more than the exercise of his rights under the servitude. As such, these acts did not constitute the adverse possession necessary to support a claim of ten or thirty year prescription. Plaintiffs, as owners, although having full opportunity to observe defendant's alleged acts of possession, could not reasonably have been expected to know of defendant's adverse claim for ownership. These alleged acts of possession would in all probability appear to them as only a use authorized by the servitude.

*Journet v. Gerard*, 173 So.2d 263, 267 (La. App. 3d Cir. 1965). The Third Circuit further explained that the defendant-possessor thus did not possess as owner, which is a necessary prerequisite for acquisitive prescription. *Id.*

Similarly, in *1026 Conti Holding, LLC*, the Louisiana Supreme Court held the precarious possessors' use of the subject lot was insufficient to give either actual or constructive notice of a change in their intent to possess the property as owners. 2022-01288, p. 18, 359 So.3d at 943. As the Louisiana Supreme Court explained, the precarious possessors "were granted the 'use' of [the subject] lot" with "no express limitations on the use, and no . . . parameters or restrictions." *Id.* Considering "the vague scope of the servitude," the Louisiana Supreme Court ruled that the precarious possessors' use of the lot for "parking, storing equipment, and placing a gas tank and pump on the property," was "not so 'unusually pronounced . . . to let the owner know that a new order of things ha[d] begun.'" *Id.* (quoting *John T. Moore Planting Co.*, 126 La. at 879, 53 So. at 35). *See also Boudreaux*, 2014-1499, pp. 8-9, 167 So.3d at 564 (holding "the continued use of

8

the right of way" did not constitute "actual notice . . . to the landowner that [the precarious possessor] intended to change the nature of his possession"). Thus, if a possessor merely exercises rights granted to him under a servitude, then his possession is precarious, not adverse. One can logically infer that, conversely, if a possessor possesses in a manner not permitted in the servitude, then this action would constitute adverse possession.

In *1026 Conti Holding, LLC*, however, the Louisiana Supreme Court further noted that the dominant estate prevented others from using the subject lot but there was no evidence it prevented the servient estate from using the lot. 2022-01288, p. 18, 359 So.3d at 943. In explaining the import of this, the Louisiana Supreme Court stated, "[a]bsent that evidence, the act of excluding third parties could reasonably be construed as an exercise of the . . . right to use the property, which is not sufficient to 'give . . . some notice that his property is in jeopardy.'" 2022-01288, p. 18, 359 So.3d at 943-44 (quoting *St. John Baptist Church of Phoenix v. Thomas*, p. 4, 2008-0687 (La. App. 4 Cir. 12/3/08) 1 So.3d 618, 621). Likewise, in *Grieshaber Family Properties, LLC v. Impatiens, Inc.*, this Court held the dominant estate did not prove the nature of the possession changed to adverse by acts sufficient to put the servient estate on notice because, in pertinent part, the owners of the servient estate occasionally used the subject property and were not told to leave when they did so. 2010-1216, pp. 8-10 (La. App. 4 Cir. 3/23/11), 63 So.3d 189, 196-97.

Turning to the matter *sub judice*, the Dedication permitted passage over the Driveway—whether by people or cars—but specifically stated that parking in the Driveway was forbidden. In *Journet* and *1026 Conti Holding, LLC*, the courts found the possessors' actions were precarious because they fell within the scope of

9

the servitude. Here, contrariwise, the Dedication expressly prohibited parking, so for the owners of 6331 Annunciation to park in the Parking Space was in violation of the Dedication and thus constituted adverse, not precarious possession. Only if their action had been permitted under the Dedication would it have been precarious. Thus, we agree with the Hoses that the action of parking cars in the Parking Space by the owners of 6331 Annunciation constituted adverse possession, not precarious possession.

However, reading *Journet*, *1026 Conti Holdings, LLC*, and *Grieshaber Family Properties, LLC*, *in pari materia*, we hold that to acquire property subject to a servitude via acquisitive prescription, the dominant estate's possession must not only be adverse to the servient estate, but also the dominant estate must exclude the servient estate from use of the property, not just exclude third parties. As noted in our original Opinion, the record did not establish that the owners of 6331 Annunciation entirely excluded the owners of 6333 Annunciation from using the Driveway and, more particularly, the Parking Space for a period of thirty years. To the contrary, Mrs. Pagett testified that the owners of 6331 Annunciation occasionally permitted the owners of 6333 Annunciation to park in the Parking Space. When asked about the use of the Driveway by the owners of 6333 Annunciation, Mrs. Pagett testified, "It was a common area. We used it. They used it; the owners of 6333 used it; the owners of 6331 used it." It is unclear as to what time period Mrs. Pagett was referring to when she said this. It is also unclear to which part of the Driveway Mrs. Pagett was referring, i.e., the Parking Space or the other part of the Driveway. Having looked at the various photographs entered into evidence, however, it is clear to us that for one to access the part of the Driveway farthest from the street, one would have to traverse the Parking Space; and for one

10

to access the street from the part of the Driveway farthest from the street, one would have to traverse the Parking Space. Thus, Mrs. Pagett's testimony encompasses the possibility that the "use" of the Driveway by the owners of 6333 Annunciation included the Parking Space part of the Driveway.

Because the Hoses bore the burden of proving their acquisitive prescription claim, we again hold the Hoses failed to carry their burden of proving adverse possession. They did not establish the owners of 6331 Annunciation excluded the owners of 6333 Annunciation from using the Parking Space for a period of thirty years so as to give the owners of 6333 Annunciation notice that their adverse possession meant the property was in jeopardy. Thus, while we find merit to the Hoses' arguments regarding precarious possession, we nonetheless deny the relief requested in their Application for Rehearing and maintain the holding in our Original Opinion that they failed to prove thirty-year acquisitive prescription.

## Prescription of Nonuse

In their Application for Rehearing, the Hoses argue this Court used the wrong legal standard regarding their claim for prescription of nonuse. The Hoses contend the O'Connells needed to prove use every ten years, not simply ten years prior to the filing of this lawsuit, and failed to do so. We agree. In this section of their Application for Rehearing, the Hoses also assert that if the servitude on behalf of 6333 Annunciation is extinguished by the prescription of nonuse, then the O'Connells are not entitled to removal of the Hoses' obstructions in the Driveway. The Hoses contend:

> Further, without any rights in the servitude, the trial court correctly denied the O'Connells' request for removal of obstructions in the Driveway: "they no longer have the authority to request the [Hoses] remove anything on the [Hoses]' side of the common [D]riveway since that half of the servitude is extinguished."

> Accordingly, this Court should reverse its judgment for the removal of the Hoses' obstruction in the Driveway.

(Footnote omitted.) We also agree with the Hoses in this regard.

Louisiana Civil Code Article 753 provides that "[a] predial servitude is extinguished by nonuse for ten years." Regarding the commencement of nonuse, La. C.C. art. 754 states that "[p]rescription of nonuse begins to run for affirmative servitudes from the date of their last use." In terms of preserving a servitude, "[a] partial use of the servitude constitutes use of the whole," and "[a] predial servitude is preserved by the use made of it by anyone, even a stranger, if it is used as appertaining to the dominant estate." La. C.C. arts. 759 and 757. The burden of proof in a prescription of nonuse claim rests with "the owner of the dominant estate" who must demonstrate "that he or some other person has made use of the servitude as appertaining to his estate during the period of time required for the accrual of the prescription." La. C.C. art. 764.

In interpreting these code articles, the Louisiana appellate courts have held that for the owner of the dominant estate to retain his servitude, he must prove there has been no ten-year period of nonuse since the beginning of the servitude. As explained by the Louisiana First Circuit Court of Appeal, "When the prescription of nonuse is pled, the owner of the dominant estate has the burden of proving he or some other person made use of the servitude during the period of time required for the accrual of the prescription, *such that no continuous ten-year period of nonuse occurred.*" *Naramore v. Aikman*, 2017-1621, p. 15 (La. App. 1 Cir. 6/4/18), 252 So.3d 935, 944 (emphasis added) (first citing La. C.C. 764; and then citing *Claitor v. Brooks*, 2013-0178, p. 6 (La. App. 1 Cir. 12/27/13), 137 So.3d 638, 643). *See also Palace Props., L.L.C. v. Sizeler Hammond Square Ltd.*

*P'Ship*, 2001-2812, p. 12 (La. App. 1 Cir. 12/30/02), 839 So.2d 82, 94 (holding that the owner of the dominant estate had to demonstrate that "no ten-year stretch of non-use occurred"). Thus, when a court rules on a prescription of nonuse claim, the issue is whether there has *ever* been a ten-year period during which the owner of the dominant estate (or his predecessors in title or someone acting on his behalf) did not use the servitude. *Latour v. Francis*, 417 So.2d 485, 487 (La. App. 1st Cir. 1982). That is, it is not enough for the court to look solely at the ten-year period preceding the assertion of the prescription of nonuse claim.[3]

The Louisiana Second Circuit Court of Appeal has held that use of the servitude in the time period preceding the prescription of nonuse claim does not waive the claim of prescription if there was a prior ten-year period of nonuse. *Entrada Co. v. Cassels*, 53,387, p. 11 (La. App. 2 Cir. 4/8/20), 293 So.3d 1260, 1267. In other words, once "a predial servitude [has been] extinguished by nonuse for ten years," it cannot be revived by subsequent use. *Id.* Rather, it can only be "revived . . . by following the formalities of creating it anew." *Id.*

Another pertinent rule regarding the prescription of nonuse is found in La. C.C. art. 755, which is titled "Obstacles to servitude." It states that "[i]f the owner of the dominant estate is prevented from using the servitude by an obstacle that he can neither prevent nor remove, the prescription of nonuse is suspended on that account for a period of up to ten years." La. C.C. art. 755. The Louisiana Fifth Circuit Court of Appeal has held that if the owner of the dominant estate alleges that obstacles prevented the use of a servitude of passage in a prescription of

---

[3] We note that there are two Opinions issued by this Court that did not look all the way back to the year of the creation of the servitude to determine whether any ten-year period of nonuse occurred; however, a review of those Opinions indicates that the reason for doing so was that the immediately preceding time period was the only period of time in dispute. *Thompson v. FRF Props., LLC*, 2017-0152 (La. App. 4 Cir. 11/2/17), 229 So.3d 598*; Succession of Rasch v. Dabezies*, 316 So.3d 1167 (La. App. 4 Cir. 10/18/17).

nonuse claim, the owner of the dominant estate must introduce evidence that he attempted to remove the obstacles to support his claim that he was prevented from using the servitude. *Palgrave v. Gros*, 2002-249, p. 6 (La. App. 5 Cir. 9/30/02), 829 So.2d 579, 583. The owner of the dominant estate can produce evidence that he requested that the servient estate remove the obstacles. *Id.* Alternatively, "the law allows the owners of the dominant estate to make repairs and remove obstacles for the use and preservation of the servitude," so the owner of the dominant estate might demonstrate that he was prevented from entering the property to remove the obstacles. *Id.* If the owner of the dominant estate fails to produce such evidence, the courts will find that prescription ran during the time period in which the obstacles allegedly prevented the use of the servitude. *Id.*

In light of the foregoing jurisprudence interpreting the pertinent code articles, the Hoses' contention has merit. In our Original Opinion we concluded that Mrs. O'Connell's father's use of the servitude in March 2022 was sufficient to defeat the Hoses' prescription of nonuse claim. However, the O'Connells did not carry their burden of proving that no stretch of ten years of nonuse associated with the owners of 6333 Annunciation occurred after the creation of the Driveway servitude via the Dedication in the year 1939. In fact, based on the record before this Court, the only time periods of use that can actually be pinpointed with specificity are the years 1999 and 2022. As Mrs. Pagett testified, prior owners of 6333 Annunciation modified their fence in 1999 and thereafter she witnessed people walk on the Driveway to go through the new fence gate. Though the above-described action of people walking on the Driveway to reach the 6333 Annunciation gate would have constituted a permissible use of the servitude so as to interrupt prescription, the problem is that the O'Connells failed to prove the

absence of a ten-year stretch of nonuse between 1939 (the year of the creation of the servitude) and 1999 (when Mrs. Pagett observed people waking on the Driveway to access the new gate). That evidence of the use of the Driveway by 6333 Annunciation in 1999 did not revive the servitude or waive the prescription claim. *See Entrada Co.*, 53,387, p. 11, 293 So.3d at 1267. The same is true regarding the use of the servitude by Mrs. O'Connell's father in 2022. Additionally, Mrs. Pagett did not specify for what period of time she witnessed people using the Driveway to access the 6333 Annunciation gate (i.e., whether just in 2009 or thereafter), so another potential period of nonuse is from 2009 through 2022. As noted in the previous section, Mrs. Pagett testified generally that the Driveway was a "common area" used by both the owners of 6331 and 6333 Annunciation, but she did not specify a time period of use by the owners of 6333 Annunciation. Arguably, the extensive use of the Driveway for parking cars by the owners of 6331 Annunciation was a physical obstacle in the way of the owners of 6333 Annunciation using the Driveway. However, the O'Connells did not put forth any evidence that their ancestors in title attempted to remove the obstacles and were thus prevented from using the servitude. *See Palgrave*, 2002-249, p. 6, 829 So.2d at 583. In sum, the O'Connells failed to carry their burden of proving that no ten-year stretch of nonuse occurred.

Because we find the O'Connells failed to carry their burden of proving no ten-year stretch of nonuse occurred, we grant the Hoses' Application for Rehearing and the relief requested on this basis. We modify our Original Opinion so as to affirm the trial court's grant of the Hoses' prescription of nonuse claim. We further modify our Original Opinion to hold that the servitude in favor of the O'Connells' property, 6333 Annunciation Street, has been extinguished by prescription of

15

nonuse. Having now found that the servitude no longer remains in favor of 6333 Annunciation, we withdraw the order in our Original Opinion directing the Hoses to remove their obstructions in the Driveway. That is, with the Driveway servitude on behalf of 6333 Annunciation now extinguished, the O'Connells no longer have the authority to request the removal of the Hoses' obstructions. We modify our Original Opinion to hold that the O'Connells' request in their Answer for us to order the Hoses to remove their obstructions is denied.

## Abuse of Rights and Trespass Claims

Finally, in their Application for Rehearing, the Hoses contend this Court failed to address their appeal of the denial of their abuse of right and trespass claims. They state the Court's Original Opinion did not address these claims yet they are entitled to judgment in their favor for the reasons advanced in their briefs and during oral argument. Looking back at their Appellant Brief, the Hoses explained therein that they sought "damages for mental anguish, inconvenience, loss of enjoyment of their property, and the like" on "the basis . . . [of] the O'Connells' placement of a truck for several months in such a way as to prevent the Hoses from using the Parking Space or the common driveway." The Hoses asserted that the O'Connells' "conduct constitute[d] an abuse of right, a trespass, and violat[ion] of the laws of vicinage." In our Original Opinion, we held the Hoses' request for damages was incidental to and dependent on their success on their acquisitive prescription claim. Having found the Hoses did not meet their burden of proving thirty-year acquisitive prescription, we held their damages claim should likewise fail because the Hoses did not have a right to park in the Parking Space anyway. In this Rehearing Opinion, we reiterate our holding that the Hoses failed to meet their burden of proving thirty-year acquisitive prescription, so they

16

are not entitled to damages for being unable to park in the Parking Space when they were not permitted to park there anyway, i.e., they did not have rights as owners via acquisitive prescription to park in the Parking Space and the Dedication prohibited parking.

However, the Hoses are correct that in our Original Opinion we did not address whether they were entitled to damages for the O'Connells' truck blocking use of the entire Driveway insofar as the Driveway was established as a servitude of passage in the Dedication. That is, we did not consider whether the Hoses were entitled to damages for purportedly being unable to use the Driveway for passage during the times the O'Connells' truck was parked in such a way as to block the Driveway. Accordingly, we now address this issue.

The Hoses' contention that they are entitled to damages for being unable to use the Driveway when the O'Connells' truck blocked it presupposes that the servitude remained in place in favor of their property. That is, embedded within their request for damages is the underlying legal conclusion that the servitude remains in favor of 6331 Annunciation because their entitlement to damages is contingent upon the servitude. Our Original Opinion affirmed the trial court's statement in its Amended Judgment that the servitude remained in place in favor of 6331 Annunciation but did not provide reasons for so affirming. Having reviewed the record again in light of the Hoses' request that we revisit the damages issue, we find our affirmation of the legal conclusion that the servitude remains in favor of 6331 Annunciation was in error. The Dedication in this case dates back to 1939, and the first family—the Fischers—did not move into 6331 Annunciation Street until 1947. The record contains no information about the use (or lack of use) of the Driveway during the time period between the enactment of the Dedication and the

17

Fischers' first couple of years living at 6331 Annunciation. Mrs. Pagett testified about her parents' use of the Driveway when she was growing up, but she was not born until June 1959. The other witness who testified as to the use of the Driveway by the owners of 6331 Annunciation was a neighbor, Eileen Campbell, and she was not born until 1956. One of the exhibits offered by the Hoses was a photograph labeled "Circa 1950," and Mrs. Pagett testified that it depicted her father and her two older sisters standing in front of their car parked in the Parking Space in "the early 1950s." There is no evidence in the record regarding the use of the Driveway by the owners of 6331 Annunciation Street between 1939 (the year of the Dedication) and 1949 (ten years later). The record thus lacks proof that the owners of 6331 Annunciation used the servitude for its first ten years between 1939 and 1949, such that it is unclear if the servitude remains in place in favor of 6331 Annunciation or if it was extinguished by prescription of nonuse. Accordingly, we modify our Original Opinion by withdrawing our affirmation of the trial court's ruling that the servitude remains in favor of 6331 Annunciation. We amend the trial court's Amended Judgment to remove the holding that the servitude remains in favor of 6331 Annunciation and affirm as amended. By failing to establish that the Driveway servitude benefitting 6331 remains in place, the Hoses also failed to establish they were entitled to damages for an inability to use said servitude, so we affirm the trial court's denial of their request for damages.

Having so amended our Original Opinion to remove the holding that the servitude remains in favor of 6331 Annunciation and having affirmed as amended in light of the Hoses' request that we address the denial of their damages claim, we note two other issues that now require modification. In our Original Opinion, we ordered the O'Connells to remove their obstructions and affirmed the trial court's

grant of the Hoses' request for injunctive relief based on our holding that the servitude remained in favor of 6331 Annunciation. However, like their request for damages, the Hoses' entitlement to these requests for relief presupposed the servitude remained in place in favor of their property, yet the Hoses failed to establish that the servitude remains in favor of their property. Accordingly, we withdraw our order in the Original Opinion directing the O'Connells to remove their obstructions in the Driveway. We also modify our Original Opinion to hold that the trial court's grant of the Hoses' request to enjoin the O'Connells from interfering with or disturbing their use of the Driveway is reversed.[4]

## DECREE

For the foregoing reasons, we grant the Hoses' Application for Rehearing in part and deny it in part. In particular, we deny relief regarding the decision in our Original Opinion not to consider the Hoses' "Appellee Brief." We also deny relief and maintain the holding in our Original Opinion that the Hoses failed to prove thirty-year acquisitive prescription. We grant relief to modify our Original Opinion so as to affirm the trial court's granting of the Hoses' prescription of nonuse claim. We further modify our Original Opinion to hold that the servitude in favor of the O'Connells' property, 6333 Annunciation Street, has been extinguished by prescription of nonuse. Additionally, we withdraw the order in our Original Opinion directing the Hoses to remove their obstructions in the Driveway; and we

_____

[4] We note that La. C.C. art. 3448 provides that "[p]rescription must be pleaded. Except as otherwise provided by legislation, courts may not supply a plea of prescription." Our Rehearing Opinion does not violate this because we have not held that the servitude in favor of 6331 Annunciation has actually been extinguished by prescription of nonuse. Rather, we have simply explained that the Hoses failed to demonstrate that the servitude in favor of 6331 Annunciation remains in place, such that we cannot grant their requests for relief that are based on the servitude still being in place in favor of their property.

modify our Original Opinion to hold that the O'Connells' request in their Answer for us to order the Hoses to remove their obstructions is denied.

Finding the record lacks proof that the servitude in favor of the Hoses' property, 6331 Annunciation Street, remains in place, we modify our Original Opinion by withdrawing our affirmation of the trial court's ruling that the servitude remains in favor of 6331 Annunciation. We amend the trial court's Amended Judgment to remove the holding that the servitude remains in favor of 6331 Annunciation and affirm as amended. Because the Hoses' right to the following requests depended upon a finding that the servitude remained in favor of their property, we also affirm the trial court's denial of their request for damages for trespass and abuse of rights; withdraw the order in our Original Opinion directing the O'Connells to remove their obstructions in the Driveway; and we modify our Original Opinion to hold that the trial court's grant of the Hoses' request to enjoin the O'Connells from interfering with or disturbing their use and enjoyment of the Driveway is reversed.

In all other respects not addressed by this Rehearing Opinion, our Original Opinion stands and is affirmed.

**REHEARING GRANTED; GRANTED IN PART AND DENIED IN PART**